

FILED
Dec 31 2013, 10:31 am
CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

APPELLANT PRO SE:

**FREDDIE L. McKNIGHT, III**
New Castle Correctional Annex
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FREDDIE L. McKNIGHT, III, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1109-CR-454 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0606-FA-49

**December 31, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Freddie L. McKnight, III, pro se, appeals the denial of his petition for post-conviction relief. On appeal, McKnight contends that the post-conviction court erred when it concluded that he was not denied the effective assistance of trial and appellate counsel. He also claims that he was denied a procedurally fair post-conviction hearing because his appointed public defender withdrew his appearance prior to the hearing and McKnight proceeded pro se. In addition, McKnight alleges that he is entitled to a new trial because the State withheld favorable evidence in violation of his due process rights. Finding that the post-conviction court did not clearly err when it denied McKnight's petition, we affirm.

**Facts and Procedural History**

The relevant facts indicate that on May 31, 2006, "a cooperating source working with Officer Shawn Turner of the Elkhart County Interdiction and Covert Enforcement Unit purchased 8.709 grams of cocaine freebase or crack from McKnight." *McKnight v. State*, No. 20A05-0708-CR-469, slip op. at 1 (Ind. Ct. App. Feb. 14, 2008), *trans. denied*. Specifically, under the direction of Officer Turner, cooperating source Mickie Rhymer called McKnight and arranged to buy a quarter ounce or "quad" of cocaine from McKnight. Trial Tr. at 90. Officers searched Rhymer, gave her $500 of photocopied cash to cover the drug purchase and a debt owed by Rhymer to McKnight, and wired her with a recording device. Rhymer and an undercover officer traveled to a residence in Rhymer's vehicle. Rhymer entered the kitchen of the residence, where she saw McKnight and scales with a bag of cocaine on it. Rhymer spoke with McKnight, and he indicated that he was giving her a little

2

"extra" cocaine. *Id*. at 97. Rhymer gave McKnight $500 in cash, and he gave her the bag later found to contain over eight grams of cocaine. Rhymer left the residence, was again searched by officers, and was found to only have the cocaine that she purchased from McKnight. As a result, the State charged McKnight with class A felony dealing in cocaine weighing three grams or more. Following a trial held on November 13 and 14, 2006, a jury found McKnight guilty as charged. The trial court imposed a sentence of forty-eight years. On direct appeal, this Court affirmed McKnight's conviction. *McKnight*, slip. op at 4.

McKnight subsequently filed a pro se petition for post-conviction relief. The State answered, and on July 15, 2010, the post-conviction court held an evidentiary hearing. The hearing was continued to February 24, 2011. Before that hearing, McKnight filed a first and a second amended petition for post-conviction relief. Evidentiary hearings were again held on February 24 and 25 and March 10, 2011. On May 18, 2011, the post-conviction court issued its findings of fact, conclusions of law, and judgment denying post-conviction relief.

Thereafter, on June 17, 2011, McKnight delivered a pro se motion to correct error to prison officials for mailing to the Elkhart Circuit Court. The motion to correct error was file-stamped by the clerk of the Elkhart Circuit Court when it was received on June 20, 2011. The post-conviction court later held a hearing on the motion to correct error. At the outset of the hearing, the post-conviction court noted that McKnight's motion was untimely filed but proceeded with the hearing. The post-conviction court entered its order denying the motion to correct error on August 29, 2011. McKnight delivered a pro se notice of appeal to prison

3

officials for mailing on September 28, 2011. That notice was deemed filed by this Court on September 30, 2011.

Several months later, after numerous defective filings and McKnight's failure to timely file an appellant's brief, on May 21, 2012, this Court dismissed the appeal with prejudice pursuant to Indiana Appellate Rule 45(D). However, on June 4, 2012, our motions panel granted McKnight's motion to file a belated brief and reinstated the appeal. Following numerous additional filings and extensions of time granted to both parties by this Court, the appeal became ready for our review.

We note that, in addition to responding to the arguments raised by McKnight in his appellant's brief,[1] the State cross-appealed, arguing that McKnight's appeal should be dismissed because his motion to correct error was untimely, and thus this Court lacks subject matter jurisdiction to consider his appeal. Agreeing with the State that we lack jurisdiction, we issued a memorandum decision dismissing the appeal. *See McKnight v. State*, No. 20A03-1109-CR-454 (Ind. Ct. App. May 22, 2013), *trans. granted*. McKnight filed a petition to transfer, and, by order of our supreme court, transfer was granted and our memorandum decision was vacated. We have been directed by our supreme court that our

---

[1] On the same date that the State filed its appellee's brief, McKnight filed an amended appellant's brief. The State did not, in turn, file an amended appellee's brief. Consequently, we note that many of the State's arguments are nonresponsive to McKnight's amended contentions of error.

4

jurisdiction has been invoked, and therefore we now consider McKnight's appeal on the merits.[2]

### Standard of Review

The appellate standard of review regarding post-conviction proceedings is well settled. Recently, in *Wilkes v. State*, 984 N.E.2d 1236 (Ind. 2013), our supreme court reiterated,

---

[2] We acknowledge and regret that some dates that were not crucial to our disposition were incorrect in our memorandum decision. However, it is undisputed that the post-conviction court denied McKnight's post-conviction petition on May 18, 2011, and, on Friday, June 17, 2011, McKnight delivered his motion to correct error to prison officials for mailing by regular mail to the Elkhart Circuit Court. The Elkhart Circuit Court properly deemed the motion filed upon receipt on June 20, 2011, more than thirty days after the entry of final judgment. When an appellant files a motion to correct error that is not mandatory under the rules, such as McKnight's motion in this case, the motion must be filed within thirty days after the judgment in order to preserve the appellant's right to appeal. *See Dixon v. State*, 566 N.E.2d 594, 596 (Ind. Ct. App. 1991), *trans. denied*; Ind. Trial Rule 59(C). In *Dowell v. State*, 922 N.E.2d 605 (Ind. 2010), our supreme court specifically noted the particularity with which the Indiana Rules of Trial Procedure define what constitutes filing and when filings are deemed to have occurred depending on the mode of delivery. *Id.* at 609; *see* Ind. Trial Rule 5(F) (filing of documents sent to the clerk by regular mail occurs upon delivery of the documents to the clerk). Indeed, when a motion to correct error is not timely filed, the right to appeal is not preserved. *Dowell*, 922 N.E.2d at 609. In its order declaring that our appellate jurisdiction has, in fact, been invoked, our supreme court stated that the timeliness of the motion to correct error had not been raised prior to the State's appellee's brief. However, the State did raise the issue in its appellee's brief and it is well settled that lack of appellate jurisdiction can be raised by a party at any time. *Bergstrom v. State*, 933 N.E.2d 555, 556 (Ind. Ct. App. 2010) (citing *Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003)), *trans. denied*.

In *Dowell*, our supreme court recognized application of the "prison mailbox rule" to the filing of a notice of appeal and documents under our appellate rules, stating that a pro se prisoner need only provide reasonable, legitimate, and verifiable documentation supporting a claim that a document was timely submitted to prison officials for mailing. *Dowell*, 922 N.E.2d at 608. The court emphasized, however, that the timing for motions to correct error is different than for notices of appeal and that, if independently verifiable means like registered mail or third-party carrier are not used, filing of a motion to correct error occurs on the date the filing is in the hands of the clerk. *Id.* at 609. Similar to the prisoner in *Dowell*, McKnight delivered his motion to correct error to prison officials for mailing on the last possible day, and he paid for the use of only regular mail rather than certified mail return receipt requested or third-party commercial carrier. McKnight's untimely filing of his motion to correct error has resulted in the failure to preserve his right to appeal. Because our supreme court's order directs us that our jurisdiction has been invoked, we must presume that the court has extended application of the prison mailbox rule to the filing of motions to correct error and to regular mail. We therefore address McKnight's claims on the merits.

Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Post-conviction proceedings do not offer a super appeal, rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Those grounds are limited to issues that were not known at the time of the original trial or that were not available on direct appeal. Issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are *res judicata*. Claims of ineffective assistance of counsel and juror misconduct may be proper grounds for post-conviction proceedings.

Because the defendant is appealing from the denial of post-conviction relief, he is appealing from a negative judgment and bears the burden of proof. Thus, the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. In other words, the defendant must convince this Court that there is *no* way within the law that the court below could have reached the decision it did. We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law.

*Id.* at 1240 (citations and quotation marks omitted). We will not reweigh the evidence or judge the credibility of witnesses, and will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962.

### *Ineffective Assistance of Counsel*

McKnight argues that the post-conviction court erred in finding that he was not denied the effective assistance of trial or appellate counsel. We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997), *cert. denied* (1998). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both

that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland*, 466 U.S. at 687), *cert. denied* (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *cert. denied* (1997). When considering a claim of ineffective assistance of counsel, we strongly presume "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).

We must initially acknowledge that the judge who presided over McKnight's original trial is also the judge who presided over the post-conviction proceedings. This Court has stated that a post-conviction court's findings and judgment should be entitled to "greater than usual deference" when the post-conviction judge is the same judge who conducted the original trial. *See McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied* (2013). In such a case, the judge is uniquely situated to assess whether trial counsel's performance fell below an objective standard of reasonableness and whether, but for

7

counsel's unprofessional conduct, there was a reasonable probability that a different verdict would have been reached. *Id*. (citing *State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003) (noting that because judge presided both at original trial and post-conviction hearing, judge was in "an exceptional position" to assess weight and credibility of factual evidence and whether defendant was deprived of fair trial)). With this in mind, we turn to McKnight's claims of ineffective assistance.

## I. Trial Counsel

### A. Adequacy of Pretrial Investigation and Resulting Cross-Examination

McKnight first asserts that his trial counsel provided ineffective assistance in failing to properly investigate and then to cross-examine the State's main witness, Rhymer. Specifically, McKnight contends that had counsel properly investigated Rhymer, counsel would have discovered and cross-examined Rhymer regarding any benefit the State may have given Rhymer in exchange for her testimony, her impeachable criminal history, her alleged mental health problems, and her alleged drug problems. While it is undisputed that effective representation requires adequate pretrial investigation and preparation, it is well settled that we should resist judging an attorney's performance with the benefit of hindsight. *Badelle v. State*, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), *trans. denied*. Accordingly, when deciding a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to counsel's judgments. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002). Indeed,

> [S]trategic choices made after thorough investigation of law and facts relevant
> to plausible options are virtually unchallengeable; and strategic choices made
> after less than complete investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitation on investigation. In

8

other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690-91.

In addition, establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what investigation, if undertaken, would have produced. *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied* (1999). "This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Id.*

McKnight has failed to establish that his trial counsel's pretrial investigation of Rhymer and the resulting cross-examination fell below an objective standard of reasonableness. At the post-conviction hearing, trial counsel testified that he knew some information about cooperating source Rhymer because McKnight had informed counsel that she had been working as his drug courier or "mule" for him prior to the controlled buy and that McKnight and Rhymer had a sexual relationship. PCR Tr. at 139, 206. Counsel subpoenaed Rhymer for a deposition in order to question her regarding all areas of possible impeachment. The Friday before the scheduled trial date, Rhymer was present in the courthouse with a court reporter and was ready for the deposition. However, prior to the deposition starting, McKnight agreed to plead guilty to the instant charges as well as another outstanding charge in exchange for the dismissal of three additional pending charges. McKnight signed the plea agreement, and Rhymer's deposition was canceled. Because the judge was not present on that date to conduct a plea hearing, the parties agreed to submit the agreement to the court on the morning of the scheduled trial, the following Monday. The

9

morning of trial, however, McKnight changed his mind and decided that he no longer wished to plead guilty. Although counsel made an oral motion for a continuance of trial, the motion was denied by the trial court and the trial proceeded as scheduled.

Under the circumstances, we agree with the post-conviction court that McKnight's argument that counsel performed deficiently in failing to conduct an adequate pretrial investigation and resulting cross-examination of Rhymer rings hollow in light of his decision to plead guilty, which obviated counsel's need to obtain the alleged impeachment information. The record reveals that counsel attempted to conduct a reasonable investigation, and it was only after McKnight decided to plead guilty that counsel determined that further investigation was unnecessary. As the post-conviction court pointedly asked McKnight, "How is it that your counsel was ineffective in that regard because he canceled the deposition which would have revealed the information because you signed a plea agreement?" *Id*. at 248. A party may not invite error on the part of counsel and then later argue that the error supports an ineffective assistance claim, because error invited by the complaining party is not reversible error. *Hardy v. State*, 786 N.E.2d 783, 787 (Ind. Ct. App. 2003), *trans. denied*. Under the circumstances, McKnight invited counsel's failure to further investigate Rhymer,

and he cannot now complain that counsel was ineffective for such failure. McKnight has not met his burden to show that his counsel performed deficiently in this regard.[3]

Moreover, McKnight has similarly not established that he suffered prejudice such that the outcome of the proceeding would have been different. As to Rhymer's motivation for testifying against McKnight, the evidence indicates that trial counsel "was fully aware that [Rhymer] had pending charges against her, and had made a deal with the State in exchange for her cooperation such that she had something to gain by testifying against [McKnight.]" Appellant's App. at 197. Contrary to McKnight's claims, the record reveals that counsel indeed cross-examined Rhymer in this regard. Trial Tr. at 104-05. Regarding counsel's failure to discover and cross-examine Rhymer about her criminal history, as we will discuss more fully below, McKnight has not demonstrated that the impeaching value of Rhymer's minor and remote criminal history was such that he was prejudiced by such failure.

The remainder of McKnight's claims as to what information further investigation of Rhymer would have uncovered and the relevance of that information amounts to sheer

---

[3] We note that McKnight dedicates a significant portion of his appellant's brief to arguing that his trial counsel was ineffective for improperly advising and coercing him to sign the plea agreement. We note that this claim of ineffective assistance was not raised in McKnight's petition for post-conviction relief, and therefore the issue is waived. "Issues not raised in a petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Walker v. State*, 843 N.E.2d 50, 58 n.2 (Ind. Ct. App. 2006), *trans. denied, cert. denied* (2007). Waiver notwithstanding, we observe that the post-conviction court did consider the issue when McKnight briefly alluded to this claim during the evidentiary hearing. After the post-conviction court pointed out how McKnight's decision to plead guilty was the cause of counsel's decision to cease further investigation of Rhymer, McKnight asserted that his decision to sign the plea was involuntary and that counsel coerced him. Counsel denied such claims. The post-conviction court did not find McKnight's assertion credible, and we will not second-guess that determination on appeal. *See Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses).

11

speculation and innuendo. Accordingly, McKnight has not demonstrated a reasonable probability that the result of the proceeding would have been different.

## B. Failure to Object

McKnight next argues that trial counsel was ineffective for failing to object to: (1) the admission of State's Exhibit 3, the audio recording of the controlled buy, and (2) the accuracy of the scales used to weigh the cocaine. To demonstrate ineffective assistance of counsel for failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection. *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied* (2002).

Regarding the admissibility of State's Exhibit 3, McKnight claims that counsel should have interposed an objection because the audio recording was only partially intelligible. Appellant's Br. at 43. However, for a tape recording to be properly admissible, "every word of a recording need not be intelligible. Rather, the tape recording, taken as a whole, must be of such clarity and completeness to preempt speculation in the minds of jurors as to its content." *Dearman v. State*, 743 N.E.2d 757, 762 (Ind. 2001). "[T]he standard of quality expected of a recording in an interrogation room cannot be used to judge a recording of a person wearing a 'bug.'" *Fassoth v. State*, 525 N.E.2d 318, 324 (Ind. 1988). Moreover, a trial court has wide discretion in determining whether to admit a tape recording into evidence. *Dearman*, 743 N.E.2d at 762.

Trial counsel testified that he believed that the audio recording was sufficiently intelligible that an objection, even if made, would not have been sustained by the trial court.

12

He further explained, "If the jury thinks that you're objecting to something and they hear the objection then they think well, there's more there to hide." PCR Tr. at 184. Therefore, he determined that the best strategy was to let the recording come in and to use it to McKnight's advantage by arguing to the jury, as he did during closing arguments, that the recording did not really supply them with any useful information. "A decision to not object to evidence when the objection may be more damaging than the evidence is within the wide range of professionally competent assistance." *Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002), *cert. denied* (2003).

As noted by the post-conviction court, McKnight himself conceded at the post-conviction hearing that the recording was sufficiently intelligible for him to identify the voices on the recording, including his own. Also, the content of the recording was merely cumulative of Officer Turner's and Rhymer's direct testimony. Under the circumstances, McKnight has failed to demonstrate that an objection would have been sustained or that counsel's decision to not object to the admission of State's Exhibit 3 was unreasonable. The post-conviction court did not err when it determined that counsel's failure to object to the admission of the exhibit did not constitute ineffective assistance.

Regarding counsel's failure to lodge a specific objection challenging the accuracy of the scales used to measure the weight of the cocaine, McKnight has similarly failed to demonstrate that a proper objection would have been sustained or that he suffered prejudice as a result of counsel's failure to lodge such objection. Wanda Sheppler, the chemist who analyzed the cocaine, testified that the laboratory scales she used to weigh the cocaine are

13

"periodically" calibrated by running "the Spiro standard weight and measure units through the balance." Trial Tr. at 143. Sheppler further testified that the scales are extremely accurate and that the accuracy of the weights obtained using the scales had never varied by more than a millionth of a gram. *Id*. at 143-44.

We agree with McKnight that the State bears the burden to show that the scale used to measure the weight of the cocaine was properly calibrated. *Turner v. State*, 878 N.E.2d 286, 294 (Ind. Ct. App. 2007), *trans. denied* (2008). However, contrary to McKnight's implication, the State was not required to prove exact dates or that the scale was checked immediately before and after the cocaine here was weighed. *See Smith v. State*, 829 N.E.2d 64, 77 (Ind. Ct. App. 2005) (State not required to prove scale was checked immediately before and after each use). Indeed, the scale's accuracy is foundational evidence, not an element of the crime. *Guadian v. State*, 743 N.E.2d 1251, 1255 (Ind. Ct. App. 2001), *trans. denied*. Although the defense may rebut the State's evidence regarding accuracy, the question of accuracy is ultimately a question for the trier of fact. *Smith*, 829 N.E.2d at 77. Thus, an objection to the the accuracy of the scales would have gone to the weight of the evidence, not to its admissibility. *See id*. In light of Sheppler's testimony regarding the periodic and specific calibration of the scales and their established accuracy, McKnight has not shown that an objection on foundational grounds would have necessarily been sustained by the trial court.

Significantly, upon cross-examination of Sheppler, McKnight's counsel questioned her extensively regarding the lack of evidence of the exact calibration dates for the scales

used to weigh the cocaine. Trial Tr. at 145-46. Again, during closing arguments, counsel highlighted the lack of evidence of the calibration dates. *Id*. at 209. Thus, trial counsel made the precise argument that McKnight claims the jury needed to hear in order to make the ultimate determination of accuracy. Accordingly, McKnight cannot show that he was prejudiced by counsel's failure to make a foundational objection.

We further note that the actual weight of the cocaine was important because the State was required to prove that McKnight delivered cocaine weighing three grams or more in order to convict him of a class A felony. *See* Ind. Code § 35-48-4-1. McKnight makes no argument that there is a reasonable possibility that the scale used here to weigh the cocaine was so inaccurate that it measured less than three grams of cocaine as weighing over eight grams.[4] In sum, the post-conviction court determined that McKnight failed to demonstrate ineffective assistance on this issue, and McKnight has not met his burden on appeal to show that the evidence conclusively points to a contrary conclusion.

## II. Appellate Counsel

We next address McKnight's claim that the post-conviction court clearly erred when it determined that he was not denied the effective assistance of appellate counsel. The standard for gauging appellate counsel's performance is the same as that for trial counsel. *Ward. v. State*, 969 N.E.2d 46, 75 (Ind. 2012). "Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of

---

[4] Indeed, during post-conviction proceedings, McKnight essentially admitted on the record that the cocaine weighed more than seven grams. PCR Tr. at 291, 310-11. As did the post-conviction court, we find McKnight's challenge to the accuracy of the scales through an ineffective assistance claim incongruous with his statements during the post-conviction hearing.

15

issues; and (3) failure to present issues well." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Judicial scrutiny is highly deferential regarding a claim that counsel was ineffective in failing to raise an issue on appeal thus resulting in waiver for collateral review, and the defendant must overcome the strongest presumption of adequate assistance. *Id.* We rarely find ineffective assistance in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. *Id.* at 1196. "One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Id.*

Similar to his arguments that trial counsel was ineffective for failing to object to the admissibility of the audio recording and the accuracy of the scales used to measure the weight of the cocaine, McKnight asserts that appellate counsel was ineffective for failing to raise the issue of the admissibility of that evidence on appeal. We reject his claims of appellate counsel ineffectiveness based on our above-stated conclusion that trial counsel was not ineffective on those same issues. *See Ward v. State*, 969 N.E.2d 46, 76 (Ind. 2012) (rejecting appellate counsel ineffectiveness claim based on prior finding of no trial counsel ineffectiveness on same issue). Where a petitioner has not established ineffective assistance of trial counsel, he can neither show deficient performance nor resulting prejudice as a result of his appellate counsel's failure to raise the same arguments on appeal. *See Davis v. State*, 819 N.E.2d 863, 870 (Ind. Ct. App. 2004), *trans. denied* (2005). The post-conviction court did not clearly err when it concluded that McKnight failed to establish that he was denied the effective assistance of appellate counsel.

16

### III. Post-Conviction Counsel

McKnight also asserts that he was deprived of a procedurally fair post-conviction hearing because his appointed post-conviction counsel withdrew prior to the evidentiary hearing and he was "forced" to proceed pro se. Appellant's Br. at 6. McKnight concedes that there is no constitutional right to counsel in post-conviction proceedings under either the federal or the state constitution. *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012). Moreover, Indiana Post-Conviction Rule 1(9) gives the State Public Defender discretion in selecting the cases it will pursue by specifically providing in relevant part as follows:

> (a) Upon receiving a copy of the petition, including an affidavit of indigency, from the clerk of the court, the Public Defender may represent any petitioner committed to the Indiana Department of Correction in all proceedings under this Rule, including appeal, if meritorious and in the interests of justice. The Public Defender may refuse representation in any case where the conviction or sentence being challenged has no present penal consequences. Petitioner retains the right to employ his own counsel or to proceed pro se, but the court is not required to appoint counsel for a petitioner other than the Public Defender.
>
> ….
>
> (c) Counsel shall confer with petitioner and ascertain all grounds for relief under this rule, amending the petition if necessary to include any grounds not included by petitioner in the original petition. In the event that counsel determines the proceeding is not meritorious or in the interests of justice, before or after an evidentiary hearing is held, counsel shall file with the court counsel's withdrawal of appearance, accompanied by counsel's certification that 1) the petitioner has been consulted regarding grounds for relief in his pro se petition and any other possible grounds and 2) appropriate investigation, including but not limited to review of the guilty plea or trial and sentencing records, has been conducted. Petitioner shall be provided personally with an explanation of the reasons for withdrawal. Petitioner retains the right to proceed pro se, in forma pauperis if indigent, after counsel withdraws.

17

*See Ford v. State*, 570 N.E.2d 84, 87 n.1 (Ind. Ct. App. 1991) (holding that inmate petitioners do not have the right to continued representation if, after review and investigation, the State Public Defender finds the proceeding is not meritorious and in the interests of justice), *trans. denied* (1992).

Here, the record reveals that after filing his first pro-se petition for post-conviction relief, McKnight requested the appointment of counsel, and the post-conviction court appointed the State Public Defender. Deputy Public Defender Kevin Hewlate entered an appearance on McKnight's behalf, and the court subsequently held a status conference and set an evidentiary hearing date. Four months prior to the hearing date, Hewlate filed a motion to withdraw his appearance and certification pursuant to Post-Conviction Rule 1(9)(c), which the trial court granted. McKnight then retained the right to employ his own counsel or to proceed pro se, and he chose to proceed pro se.

McKnight makes no claim that the post-conviction court or his post-conviction counsel failed to comply with the procedures mandated by the rules. Rather, he simply urges that he should be granted a new post-conviction hearing with another appointed attorney. Given that the right to counsel in a post-conviction proceeding is not guaranteed and that he was represented by appointed counsel until counsel properly withdrew as provided by our post-conviction rules, McKnight has stated no viable claim of error.[5]

---

[5] McKnight also contends that he was deprived of a procedurally fair post-conviction hearing because the post-conviction court denied his request to obtain Rhymer's mental health records. As specifically noted by the post-conviction court, there is no evidence that Rhymer's mental health was relevant other than speculation by McKnight. Appellant's App. at 195-96.

***Brady Claim***[6]

As a final matter, McKnight argues that he is entitled to post-conviction relief because the State withheld impeaching information regarding the fact that Rhymer had a prior conviction for theft in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). At the post-conviction hearing, Rhymer testified that she had been convicted of theft in 1996, ten years before McKnight sold her cocaine.[7] We note that the State has an affirmative duty to disclose material evidence favorable to the defendant. *Id*. *Brady* applies to evidence impeaching the credibility of the State's witnesses. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). To prevail on a *Brady* claim,

> a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. Evidence is material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*State v. Hollin*, 970 N.E.2d 147, 153 (Ind. 2012) (citations and internal quotation marks omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Here, neither of the two deputy prosecutors who testified during the post-conviction proceedings could recall anything about Rhymer's criminal history. They stated that it was

---

[6] We note that McKnight did not raise his *Brady* claim on direct appeal. "Issues available to the defendant on direct appeal which are not raised are generally forfeited." *Minnick v. State*, 698 N.E.2d 745, 751 (Ind. 1998). However, because it is unclear when McKnight became aware of Rhymer's prior conviction and to the extent that he has intertwined this claim with his ineffective assistance of trial counsel claim for failure to investigate and cross-examine Rhymer, we will exercise the abundance of caution and address his claim.

[7] McKnight asserts that Rhymer may have had two prior criminal convictions at the time she testified. The post-conviction record, however, does not support that assertion.

their practice, however, to disclose impeachable offenses and that they provided twenty-three pages of requested discovery to McKnight's trial counsel. Trial counsel testified that he had no information regarding Rhymer's criminal history in his file but that he had never had a problem with the State withholding criminal history information regarding cooperating sources. Counsel stated that he believed he would have likely obtained that information at Rhymer's scheduled deposition that was canceled due to McKnight's signing of the plea agreement. Counsel indicated that, even had he known that Rhymer had a prior theft conviction, he may not have used it to impeach her testimony due to the crime's minor nature.

Even assuming, as McKnight argues, that the State failed to disclose Rhymer's criminal history to trial counsel, to prevail on a *Brady* claim, a petitioner must demonstrate that the evidence in question was material to an issue at trial such that there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed to the defense. *See id*. Upon review, in light of all of the evidence presented at trial, the impeaching value of Rhymer's ten-year-old theft conviction was negligible, at best. *See Carroll v. State*, 740 N.E.2d 1225, 1230 (Ind. Ct. App. 2000) (impeaching value of six-year-old misdemeanor conviction for false informing was negligible in light of all the evidence presented), *trans. denied* (2001); *see also Reid v. State*, 984 N.E.2d 1264, 1271-72 (Ind. Ct. App. 2013) (impeaching value of twenty-four-year-old robbery conviction was negligible in light of independent evidence of guilt), *trans. denied*. Here, the jury was not exposed to someone portrayed as "a highly credible witness or an otherwise upstanding

citizen." *See Carroll*, 740 N.E.2d at 1230. On cross-examination, Rhymer admitted that she was serving as a cooperating source with police and participated in the controlled buy because she was "in trouble" and was trying to avoid possible criminal charges that would be brought against her. Trial Tr. at 104-05.

In addition to Rhymer's testimony, the State presented ample independent evidence of McKnight's guilt. The record demonstrates that Rhymer's testimony was cumulative of the testimony of several undercover officers as well as the audio recording of the controlled buy. Under the circumstances, McKnight has not demonstrated a reasonable probability that the outcome of his trial would have been different had trial counsel known about the theft conviction and attempted to impeach Rhymer with questions about that remote conviction. Accordingly, his *Brady* claim fails. In sum, McKnight has failed to convince us "that there is *no* way within the law that the court below could have reached the decision it did." *Wilkes*, 984 N.E.2d at 1236. The post-conviction court's denial of McKnight's petition for post-conviction relief is affirmed.

Affirmed.

BAKER, J., and NAJAM, J., concur.