## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

John A. England
Special Assistant to the Public Defender of Indiana
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher W. Hovis,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

July 16, 2015

Court of Appeals Case No. 92A03-1412-PC-418

Appeal from the Whitley Circuit Court

The Honorable James R. Heuer, Judge

Case No. 92C01-0212-FC-201

**Crone, Judge.**

# Case Summary

[1]     Christopher W. Hovis appeals the postconviction court's denial of his petition for postconviction relief. He challenges the postconviction court's admission of certain exhibits and the voluntariness of his guilty plea on a habitual offender

count. Finding that the exhibits were relevant and thus admissible and that his habitual offender guilty plea was not involuntarily made, we affirm.

## Facts and Procedural History

[2] The facts as summarized in an unpublished memorandum decision on Hovis's second belated direct appeal are as follows:

> On July 9, 2002, Hovis, Ronrico Hatch (Hatch), James Piatt (Piatt), and two unnamed persons visited a cornfield in Whitley County, Indiana under the guise of locating marijuana in the cornfield. According to Hovis, Hatch and Piatt were involved in a dispute over marijuana money. While walking through the cornfield, Hatch fired several gunshots at Piatt, and Piatt shot Hatch once. Piatt was fatally wounded, and Hatch received a bullet wound in his abdomen. Hovis left Piatt's body in the cornfield and took Hatch to a hospital, where he claimed that Hatch had been shot by an unknown person in Shoaff Park, located in Fort Wayne, Indiana.

> The following day, on July 10, 2002, Hovis and his brother took Piatt's car and drove to Whitley County, where they set the car ablaze and destroyed it. On July 11, 2002, Hovis and his brother returned to the cornfield with the intention of killing Piatt if he were still alive. Piatt was dead when they found him, so they dragged his body further into the cornfield where it would not be visible from the road. Piatt's body remained there for 47 days until it was discovered on August 25, 2002. At that point, Piatt's body had decomposed to the extent that it could not be embalmed and Piatt's mother was unable to have an open casket for Piatt's funeral. Piatt's family searched the cornfield and found two pieces of Piatt's braided hair, one of which was attached to part of Piatt's skull.

> On December 19, 2002, the State filed an Information charging Hovis with Count I, assisting a criminal, a Class C felony, I.C. § 35-44-3-2; Count II, arson, a Class D felony, I.C. § 35-43-1-1(d); Count III, moving a body, a Class D felony, I.C. § 36-2-14-17(b); and Count IV, habitual offender. On January 2, 2003, the trial court held an initial hearing, at which point Hovis entered a plea of not guilty. On June 23,

2003, Hovis filed a motion to withdraw his former plea of not guilty and to enter a plea of guilty to all Counts.

On August 25, 2003, the trial court held a sentencing hearing and merged Hovis' convictions for Counts II and III with Count I, finding that the same factual bases supported each conviction. [Hovis admitted to being a habitual offender.] The trial court sentenced Hovis to eight years for assisting a criminal, with an enhancement of twelve years for being an habitual offender. In total, Hovis received a sentence of 20 years' incarceration in the Indiana Department of Correction, with no time suspended.

*Hovis v. State*, No. 92A03-1011-CR-613 (Ind. Ct. App. Dec. 27, 2011).

[3]     With respect to the habitual offender count, a clerical error in the charging information misstated the sentencing year for the first predicate offense as 2001 instead of 2000. Other evidence, including the presentence investigation report ("PSI"), showed that Hovis's first predicate offense was a felony auto theft conviction ("Cause DF-25") for which he was sentenced to one and a-half years' probation on March 24, 2000. On or about May 11, 2000, he committed theft and was charged with three counts of class D felony theft ("Cause DF-617"). Because he was on probation when he committed theft, the State filed a petition to revoke his probation on August 2, 2000. On November 14, 2000, while the probation revocation was still pending in Cause DF-25, Hovis pled guilty and was convicted in Cause DF-617. On December 4, 2000, the trial court revoked Hovis's probation in Cause DF-25 and remanded him to the Indiana Department of Correction ("DOC"). At the same hearing, the trial court sentenced him in Cause DF-617 to one year in the DOC, to be served consecutive to his sentence in Cause DF-25.

[4]    In January 2006, Hovis filed a petition for postconviction relief. He filed belated direct appeals in 2010 and 2011, the first of which was dismissed and the second of which resulted in the affirmance of his sentence.[1] In January 2014, he filed an amended petition for postconviction relief, claiming that his guilty plea to the habitual offender count was not voluntarily entered.

[5]    At the May 2014 postconviction hearing, Hovis argued that the prosecutor misled him concerning his eligibility as a habitual offender. The State offered Postconviction ("PC") Exhibits A through G over Hovis's relevancy objections. These exhibits comprise copies of chronological case summaries ("CCS"), charging informations, probable cause affidavits, and sentencing orders from Causes CF-25 and CF-617. The postconviction court admitted the exhibits and took judicial notice of Hovis's 2003 PSI. On August 7, 2014, the postconviction court issued its findings of facts and conclusions of law denying Hovis's petition.

[6]    Hovis filed a motion to correct error and request for an evidentiary hearing. At the hearing, he introduced copies of DOC records concerning his commitments. The State was granted leave to file a written response, and the postconviction court subsequently denied Hovis's motion to correct error. Hovis now appeals. Additional facts will be provided as necessary.

---

[1] The sentencing issues raised in Hovis's second belated direct appeal are distinct from the issues raised in this appeal.

# Discussion and Decision

Hovis contends that the postconviction court erred in denying his petition for postconviction relief. The petitioner in a postconviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Postconviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the postconviction court must make findings of fact and conclusions of law. Ind. Postconviction Rule 1(6). A petitioner who appeals the denial of his postconviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct. App. 2013), *trans. denied* (2014). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a postconviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253. Postconviction relief does not offer the petitioner a super appeal; rather, subsequent collateral challenges must be based on grounds enumerated in the postconviction rules. *McKnight*, 1 N.E.3d at 199. These

rules limit the scope of relief to issues unknown or unavailable to the petitioner on direct appeal. *Id.*

# Section 1 – The postconviction court acted within its discretion in admitting State's Postconviction Exhibits A through G.

Hovis challenges the postconviction court's admission of State's PC Exhibits A through G. We review a postconviction court's ruling on the admissibility of evidence for an abuse of discretion. *Badelle v. State*, 754 N.E.2d 510, 521 (Ind. Ct. App. 2001), *trans. denied*. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Members v. State*, 857 N.E.2d 1019, 1021 (Ind. Ct. App. 2006).

Hovis maintains that the State's PC Exhibits A through G were inadmissible on relevancy grounds. *See* Ind. Evidence Rule 402 ("Evidence which is not relevant is not admissible."). Indiana Evidence Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

With respect to the relevancy of the challenged exhibits, the postconviction court found that "State's Exhibits A through G clearly establish that Christopher W. Hovis was an Habitual Felony Offender when he was sentenced, herein, on August 25, 2003, pursuant to his guilty plea." Appellant's

App. at 141. State's PC Exhibits A through C consist of the CCS, probable cause affidavit, and guilty plea and sentencing transcripts respectively, all for Cause DF-25. State's PC Exhibits D through G consist of the CCS, charging information, probable cause affidavit, and judgment of conviction respectively, all for Cause DF-617. Exhibit D is highly probative as it explains Hovis's assertion that he remembered being sentenced for Causes DF-25 and DF-617 at the same time by the same judge, "right around Christmas." Tr. at 12. This exhibit, comprising the CCS for Cause DF-617, shows that on December 4, 2000, the trial court imposed sentence on Cause DF-617. At that time, the trial court (and CCS) did reference Cause DF-25 because Hovis had previously been sentenced to probation in that case and had violated that probation and been remanded to the DOC. Thus, the trial court simply ruled that Hovis's sentence for Cause DF-617 would run consecutive to his reinstated sentence for Cause DF-25 following his probation revocation. As such, Hovis's recollection of simultaneous sentencing in Causes DF-25 and DF-617 is inaccurate.

[11] Considered individually and together, State's PC Exhibits A through G contain dates and other information relevant to establishing the substance and sequence of Hovis's prior unrelated felony convictions as required under the habitual offender statute. Ind. Code § 35-50-2-8(c). Thus, the exhibits were not inadmissible on relevancy grounds. Based on the foregoing, we conclude that the postconviction court did not abuse its discretion in admitting them.

# Section 2 – The postconviction court did not clearly err in denying Hovis's petition for postconviction relief.

Hovis contends that the trial court clearly erred in finding that he had failed to meet his burden of establishing grounds for postconviction relief. His sole contention is that his plea of guilty to the habitual offender charge was not voluntarily made but was the result of allegedly misleading conduct by the prosecutor. "Pleas entered after coercion, judicial or otherwise, will be set aside. Defendants who can prove that they were actually misled by the judge, the prosecutor, or defense counsel about the choices before them will present colorable claims for relief." *White v. State*, 497 N.E.2d 893, 905-06 (Ind. 1986).

Indiana Code Section 35-50-2-8 (2001) outlines the requirements for a habitual offender count in pertinent part as follows:

> (a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.
>
> ….
>
> (c) A person has accumulated two (2) prior unrelated felony convictions for purposes of this section only if:
>
>> (1) the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction; and
>>
>> (2) the offense for which the state seeks to have the person sentenced as a habitual offender was committed after

sentencing for the second prior unrelated felony conviction.

[14] In its order denying Hovis's petition for postconviction relief, the postconviction court found as follows with respect to the habitual offender count:

> 4. The information for Habitual Felony Offender filed on December 19, 2002, contains a clerical error in that the sentencing date of the first felony conviction alleges "the 24th day of March, 2001," and the correct date is the "24th da[y] of March, 2000."
>
> 5. State's Exhibits A through G clearly establish that Christopher W. Hovis was an Habitual Felony Offender when he was sentenced, herein, on August 25, 2003, pursuant to his guilty plea.
>
> 6. Weatherford v. State[,] 619 N.E.2d 915 (Ind. 1993) is applicable to this proceeding.
>
> 7. The Petitioner was not "misled" by the State as a result of the clerical error.

Appellant's App. at 140-41.

[15] In *Weatherford*, our supreme court explained that in postconviction cases, "[w]e have considered possible defects in habitual offender proofs as 'fundamental error' such that they may be raised notwithstanding failure to do so on direct appeal. Where we have granted relief, however, the evidence has demonstrated that the commission/conviction/sentencing *were not* in the proper order." 619 N.E.2d at 917 (emphasis added). The *Weatherford* court emphasized that a postconviction petitioner "must demonstrate that his various convictions did not in fact occur in the required order." *Id*. at 918.

Here, the habitual offender information contained a typographical error, listing the sentencing year for the first predicate offense as 2001 rather than 2000, therefore taking it out of sequence. The prosecutor read the information aloud in court, complete with error, and Hovis admitted that he was a habitual offender. Hovis now claims that this conduct misled him "regarding his eligibility for habitual offender status" and thus induced him to enter a coerced, involuntary guilty plea. Reply Br. at 2. We fail to see how. If the sentencing date listed in the information for Cause DF-25 had appeared to be *in* sequence when it actually was not, then his claim would have merit. Here, however, the reverse occurred. The information contained a date that was clearly *out* of sequence and which, if true, would have invalidated the habitual offender count. If anything, the clerical error and prosecutor's examination of him using the erroneous date would have given him the false hope that he did *not* qualify as a habitual offender. In contrast, the PSI clearly outlines the correct sequence of the commission, conviction, and sentencing for his predicate offenses, and Hovis admitted to the trial court at sentencing that he had read and reviewed the PSI. Petitioner's Ex. 3. The only concerns that Hovis raised as to the accuracy of the information contained in the PSI concerned a pending criminal charge in Allen County. *Id.* at 16.

In short, Hovis's prior unrelated felonies and sentencing dates were, in fact, in the proper sequence, and he has failed to establish that the State used the clerical error in the information to induce him to enter a guilty plea that he otherwise would not have entered. As such, he has failed to establish clear

error in the postconviction court's finding that he was not misled into pleading guilty to the habitual offender count. Consequently, we affirm.

[18] Affirmed.

Brown, J., and Pyle, J., concur.