# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 22 2016, 6:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

William D. Polansky
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Raymond Lamont Hawkins, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 22, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1507-PC-987 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt M. Eisgruber, Judge <br><br> Trial Court Cause No. <br> 49G01-0303-PC-41722 |

**May, Judge.**

Raymond Hawkins appeals the denial of his petition for post-conviction relief. As Hawkins's counsel was not ineffective for declining to investigate certain witnesses, we affirm.

## Facts and Procedural History

At about 3:30 the morning of March 16, 2003, A.S. drove to the Watering Hole, a neighborhood bar, to leave a note on her boyfriend's truck. Her six-year old daughter and six-week old son were with her. As she walked back from the truck, she was approached by a man who propositioned her. Hawkins intervened and told the man to leave A.S. alone. The man left, then Hawkins began propositioning A.S. A.S. tried to leave, but Hawkins walked in front of her. As she was entering her car, Hawkins pulled her hair, put a gun to her neck, and told her that she better do what he said or her children would die. A.S. and Hawkins got into her car.

Hawkins told A.S. to drive. He eventually told A.S. to park and ordered her to get out of the car. Hawkins grabbed A.S.'s arm, put a gun to her side, and threatened to shoot her. He pushed A.S. to a wooded area near a building. Hawkins demanded A.S. perform oral sex, and she complied. He then raped her. He threatened A.S. and her children, then produced a tape recorder and recorded A.S. saying things he demanded she say.

Hawkins pointed the gun at A.S. and robbed her. A.S. handed Hawkins the five dollars she had with her and they returned to her car. He drove to an alley just off State Street and demanded to see A.S.'s license. He then threatened

her, saying "I got a picture and I got your address. If you ever tell anybody, I'll come and kill you and your kids." (Tr. at 62.) Hawkins exited the car, took a duffel bag filled with diapers, bottles, and children's clothing, and a bag of food A.S. had recently purchased, then ordered A.S. to drive away with her lights switched off.

[5] A.S. drove to a friend's house where she beat on the door, crying and hollering, and told her friend she had been threatened, raped, and robbed. A.S. called the police. After an examination at a hospital, DNA testing revealed Hawkins' DNA in the swab samples taken from A.S. A.S. identified Hawkins in a photo array. Police officers arrested Hawkins at his mother's home later that day and executed a search warrant. They did not find a gun, A.S.'s identification, or the duffel bag, but they did find a grocery bag of food. Hawkins' mother said the food belonged to Hawkins. The items in the bag matched those on A.S.'s grocery receipt.

[6] The State charged Hawkins with twelve counts, including rape, criminal deviate conduct, carjacking, criminal confinement, and intimidation. It also charged Hawkins as an habitual offender. A jury found Hawkins guilty of rape and criminal deviate conduct, and acquitted him of the other charges. Hawkins waived a jury trial for the habitual offender adjudication and the trial court found him guilty.

On direct appeal, Hawkins challenged the sufficiency of the evidence. We affirmed. Hawkins then petitioned for post-conviction relief, which petition was denied.

## Discussion and Decision

Post-conviction proceedings are not "super appeals"; rather, those proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. *Id*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to its conclusions of law. *State v. Hollin*, 970 N.E.2d 147, 151 (Ind. 2012). We may not reweigh the evidence or assess the credibility of the witnesses. *Id*. at 150.

To succeed on a claim of ineffective assistance of counsel, a petitioner must show not only that his trial counsel's representation fell below an objective standard of reasonableness, but also that the deficient performance resulted in prejudice. To establish prejudice, a petitioner must show that counsel's errors were so serious as to deprive him of a fair trial because of a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied*; *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). A reasonable

probability is a probability sufficient to undermine confidence in the outcome. *Id*.

[10] There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. *Id*. at 746-47. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. at 747. On appeal, we do not second guess counsel's strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests. *Elisea v. State*, 777 N.E.2d 46, 50 (Ind. Ct. App. 2002). If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011).

[11] Effective representation requires adequate pretrial investigation and preparation, but we resist judging an attorney's performance with the benefit of hindsight. *McKnight v. State*, 1 N.E.3d 193, 200 (Ind. Ct. App. 2013). Accordingly, when deciding a claim of ineffective assistance for failure to investigate, we give a great deal of deference to counsel's judgments. *Id*. at 201. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. *Id*.

In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id*.

[12] As counsel's decision not to investigate the witnesses[1] Hawkins offered was a reasonable strategic choice, we may not reverse. Hawkins admitted having sex with A.S., but testified at trial it was consensual and based on a "sex-for-drugs" agreement. He testified he had met A.S at the Watering Hole a year earlier, and since then they had engaged in at least two sex-for-drugs transactions. He testified A.S. might have falsely accused him of rape because she was angry that she had dropped the rock of cocaine Hawkins had given her and he would not give her any more to replace it. A.S. testified she had never seen Hawkins before or gotten drugs from him.

[13] Hawkins now argues counsel should have secured witnesses, particularly one named Nicole Welch, who could have provided evidence that A.S. and

---

[1] One witness Hawkins argues his counsel should have presented did not appear to have evidence that would support Hawkins' premise that he and A.S. knew each other. Jennifer Luna testified at the post-conviction hearing that she worked at the Watering Hole when A.S. and Hawkins were both patrons there, but she said only that she was "pretty sure" they had both been there at the same time. She couldn't "place them at the same table together." (Tr. at 20.)

The other witness Hawkins argues should have been presented, Nicole Welch, testified at the post-conviction hearing that she had seen Hawkins and A.S. together before the rape accusation. In its findings and conclusions the post-conviction court said Welch "stated that on one occasion, she saw the victim and Defendant together at a gas station," and she "did not testify as to any specific interaction between Defendant and the victim." (Findings and Conclusions at 7.)

Welch's testimony was not so limited. The post-conviction court's findings do not acknowledge Welch's testimony that she not only saw the two "together at a gas station," (Tr. at 15), but they were in a car, and it was A.S.'s car. Welch also testified she had seen Hawkins and A.S. "quite a few places." (*Id*.)

Hawkins knew each other. Such evidence, he argues, would have indicated A.S. was not being truthful and "[s]uch a material diminution of A.S.'s credibility would have given Mr. Hawkins a reason-able [sic] shot at an acquittal." (Br. of Petitioner-Appellant at 16.)

[14] Hawkins' counsel testified he believed the defense that Hawkins and A.S. had engaged in sex-for-drugs transactions and the sex was consensual "just . . . didn't make any sense." (Tr. at 58.) Counsel interviewed A.S. and found her "extremely emotional" with emotion that was "sincere and . . . not consistent with somebody who . . . would have reported [Hawkins] as having committed what appeared to be from the materials a vicious sexual assault because he refused to give her additional drugs." (*Id.*) A.S. would have been "a very sympathetic figure from what appeared to be very sincere emotion." (*Id.*) Counsel believed it was unwise for Hawkins to testify the encounter was consensual because it would put Hawkins in a bad light as a drug dealer, and given A.S.'s demeanor, "it was a terrible line of questioning."[2] (*Id.* at 48.)

---

[2] Hawkins testified at his post-conviction hearing that he provided his counsel the names of several witnesses, including "Nikki Welch." (Tr. at 10.) In its Statement of the Facts and again in the Argument section of its brief, the State notes trial counsel's testimony that at some point during his preparation, he considered a possible witness named "Nikki," but counsel's notes indicated Hawkins did not want her called as a witness because she was a "crackhead" and he didn't know what she would say. (*Id.* at 55.) The State offers that testimony to support its argument that not "procuring witnesses of very limited – if any – value," (Br. of Appellee at 16), was a strategic choice.

We decline to consider that part of the State's argument. The record reflects this case involved two persons called "Nikki," but the State does not appear to acknowledge in its brief anyone called "Nikki" other than Nicole Welch. That omission suggests the witness "Nikki" that Hawkins did not want because she was a "crackhead" must have been Welch. But the State does not direct us to anything in the record to indicate the

Counsel's decision not to call Nicole Welch as a witness was a reasonable strategic choice we will not second-guess, and we must therefore affirm.

Affirmed.

Najam, J., and Riley, J., concur.

---

"Nikki" that Hawkins did not want called as a witness was Welch, who is the person Hawkins argued his counsel should have investigated and presented as a witness at trial.