## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 27 2016, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Kenneth D. Alvies
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth D. Alvies,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

October 27, 2016

Court of Appeals Case No.
33A04-1510-PC-1691

Appeal from the
Henry Circuit Court

The Honorable
Mary G. Willis, Judge

Trial Court Cause No.
33C01-1411-PC-7

**Kirsch, Judge.**

[1] Kenneth D. Alvies ("Alvies") appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred in denying his petition. On appeal, he raises the following restated issues for our review:

> I. Whether Alvies received ineffective assistance of his trial counsel;
>
> II. Whether Alvies received ineffective assistance of his appellate counsel; and
>
> III. Whether Alvies can raise freestanding claims of error as to sentencing.

[2] We affirm.

## Facts and Procedural History

[3] The facts supporting Alvies's convictions as set forth by this court in a published opinion on his direct appeal are as follows:

> In the spring of 2000, Alvies lived with his girlfriend, Josie Muscar, and her two sisters, Julia Wilder and Hazel Conley, on South 6th Street in New Castle. James Davis, who sold drugs, lived down the street from Alvies. In late May 2000, Alvies gave Muscar some cocaine to give to Davis, which Muscar later delivered to Davis at a local bar.
>
> On April 4, 2000, Wilder planned to pick up Conley from school around 2:00 p.m. Before she left, the telephone rang, and Wilder answered it. Wilder recognized the voice of the person calling as Davis and handed the phone to Alvies. Wilder heard Alvies tell Davis that he would "be right there." Before Alvies left the house, Wilder saw him standing in Conley's bedroom and also

observed a small gun on the bed. Alvies and Wilder left the house at the same time, and Alvies returned fifteen to twenty minutes later.

Also on April 4, Michelle Morgan, who regularly purchased drugs from Davis, arrived at Davis' home to buy oxycontin. Morgan entered the house and saw Davis sitting on the floor with saliva coming out of his mouth. She then saw a second man, later identified as Donnie Nicholson, lying face down in the bathroom. Morgan believed that the men were suffering from drug overdoses, and she left to get help. She saw a neighbor, Matt Schetgen, and asked him to call 911. She then went home to tell her husband, and the two returned to Davis' home. When Morgan discovered that no one had called 911, she made the call.

New Castle Police Officer Brad Brown was the first officer at the scene. When Officer Brown arrived, he saw Morgan sitting next to Davis and noticed blood in Davis' hair. Morgan told Officer Brown about the man in the bathroom, and the officer determined that Nicholson was warm but had no pulse. Officer Brown discovered blood on Nicholson's chest, two holes in his sweatshirt, and an injury to his head. Both Davis and Nicholson died of gunshot wounds. Davis was shot in the head, and Nicholson suffered three gunshot wounds, two to the body and one to the head.

As police and emergency vehicles began to arrive at Davis' home, Conley and others gathered on the porch to watch the events down the street. Alvies, however, did not go out onto the porch. At some point that afternoon, Alvies asked for a ride to Muncie. When no one in the house would give him a ride, Alvies contacted a friend who agreed to take him. Before he left for Muncie, Alvies asked Muscar for gray duct tape. Muscar, who was pregnant at the time and upset with Alvies because he was not going to take her to the doctor, asked Alvies why he was

leaving, and Alvies stated to Muscar that "he did it" and if she told anyone, he would kill her.

Later in the day on April 4, Indiana State Police Trooper David Cashdollar arrived at Davis' home to collect evidence. He recovered a .25 caliber automatic pistol from a recliner in the front room where Davis was found, but that gun was inoperable. Trooper Cashdollar found spent shell casings in the front room, on top of the washing machine in the utility room, and in the pocket of a shirt hanging in the utility room. Thereafter, a paramedic who had been at the scene working on Nicholson found a spent shell casing in his medical bag. According to the paramedic, the shell casing must have fallen inside his bag as he lifted Nicholson's body off the floor.

On the night of April 4, Conley found a brown holster under her mattress in her bedroom. She contacted police, and officers later retrieved the holster. Subsequently, by examining the caller identification box at Davis' home, police learned of Davis' telephone call to Alvies' home at 1:38 p.m. on April 4. On April 14, 2000, the State charged Alvies with two counts of murder.

While Alvies was in jail awaiting trial, he told two inmates, Brian Pfenninger and Matthew Dishman, that he had committed the murders. Specifically, he told Dishman that he went to Davis' house that day to collect money for cocaine that Davis was supposed to have sold for Alvies. Alvies told Dishman that Davis claimed that he did not have the money to pay him, and that Muscar had not given him all the cocaine that was supposed to have been delivered. He further told Dishman that he shot Davis in the head and, as he looked around the house for money, he saw Nicholson looking out of the bathroom. Alvies then shot Nicholson three times, twice in the chest and once in the head. Alvies told Pfenninger a similar version of events. He also told Pfenninger, however, that he was going to kill Muscar and her family and that she was too scared to testify against him.

On June 23, 2001, Shirley Dudley was performing some maintenance and gardening work at Davis' former residence. While digging in an area near the back stairs, Dudley found a small automatic pistol wrapped in gray duct tape. As a result of exposure to the elements, the gun was inoperable. Indiana State Police Sergeant Mark Keisler repaired the gun and compared it with the spent casings found in Davis' home and the bullets recovered from the two victims' bodies. Sergeant Keisler determined that the bullets were all fired from the same weapon and could have been fired from either the buried gun or the gun officers had found inside Davis' home. However, he determined that the spent casings had all been fired from the gun buried behind Davis' home.

*Alvies v. State*, 795 N.E.2d 493, 496-97 (Ind. Ct. App. 2003), *trans. denied*.

[4] On April 14, 2000, the State charged Alvies with two counts of murder, and the case proceeded to jury trial in June 2002. The jury found Alvies guilty of both counts of murder, and on August 1, 2002, the trial court sentenced him to two consecutive terms of fifty-nine years, for an aggregate sentence of 118 years. Alvies filed a direct appeal alleging that the trial court abused its discretion when it denied Alvies's motion to remove three jurors, admitted testimony that Alvies claimed was an evidentiary harpoon, refused to give the jury one of his proposed instructions regarding witness credibility and impeachment, and denied his motion for a mistrial. A panel of this court affirmed his convictions and sentence in a published opinion. *See Alvies*, 795 N.E.2d 493.

[5] Alvies filed a petition for post-conviction relief, alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and sentencing error in

relying on aggravating circumstances in violation of *Blakely v. Washington*[1] and *Apprendi v. New Jersey*.[2] At the hearing on his petition for post-conviction relief, Alvies, acting pro se, presented the testimony of New Castle Police Department Officer David Carnes ("Officer Carnes"), who investigated the case against Alvies. Officer Carnes helped create State's Exhibit 3, a video showing a caller ID box belonging to Wilder, which revealed that at 1:38 p.m. on the day of the murders, Wilder received a call from Davis's home address. During the post-conviction relief hearing, Officer Carnes testified that State's Exhibit 3 had not been "tampered with before it was recorded" and the video as it had been shown to the jury was accurate. *P-CR Tr.* at 7.

[6]   Alvies also presented the testimony of David McCord ("McCord"), who was his trial counsel. McCord testified that the theory of defense at trial was Alvies's innocence. McCord testified that Alvies never informed him of any alibi, but McCord did have an investigator who looked into several witnesses and performed investigation for the defense. *Id.* at 9-10, 30-31. McCord also stated he did not depose all witnesses in a criminal defense case because there can be disadvantages to doing so such as locking the witness into certain testimony. *Id.* at 29. Alvies asked McCord why he did not object to the pre-sentence report during sentencing, and McCord responded that he and Alvies had reviewed it and "didn't have anything objectionable at the time and in fact .

---

[1] 542 U.S. 296 (2004).

[2] 530 U.S. 466 (2000).

. . [had] hired our own sentencing and mitigation specialist who prepared our own Pre-Sentence Investigation Report that we provided to the Court." *Id*. at 26. McCord also testified that he did not recall some of the details of his representation of Alvies due to the lengthy time since the trial.

[7] At the conclusion of the post-conviction relief hearing, the post-conviction court took the matter under advisement. On August 21, 2015, the post-conviction court issued its order denying Alvies's petition for post-conviction relief. Alvies now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[8] Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[9] When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole

unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

## I. Ineffective Assistance of Trial Counsel

[10] When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State,* 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Id*. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[11] Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry*, 904 N.E.2d at 308 (citing *Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998)). Isolated omissions or errors, poor strategy, or bad tactics do not necessarily render representation ineffective. *Shanabarger v. State*, 846 N.E.2d 702, 708 (Ind. Ct. App. 2006), *trans. denied*. The two prongs of the *Strickland* test are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S. Ct. 2376 (2015). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id*. (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002)).

[12] Alvies argues that the post-conviction court erred in denying his petition for post-conviction relief because he received ineffective assistance of trial counsel for several reasons. He argues that his trial counsel was ineffective for failing to depose an eyewitness who saw a suspect going into Davis's home twenty to thirty minutes prior to the police arriving and for failing to investigate alibi witnesses. Alvies also claims his trial counsel was ineffective for failing to

object to certain evidence Alvies alleges was tampered with and for failing to hire an independent firearms examiner to examine the firearms admitted into evidence in this case. Lastly, Alvies argues that his trial counsel was ineffective because he failed to object to the pre-sentence investigation report.

### A. Deposition of Witness

Alvies first asserts that his trial counsel, McCord, was ineffective for failing to depose Deborah Shelley ("Shelley"), who was Davis's neighbor and, prior to trial, gave a statement to the police in which she described observing an individual, later identified as Alvies, entering Davis's residence and wearing a green Army jacket and being "medium to tall and thin." *Trial Tr.* at 956. At trial, Shelley only testified that Alvies was wearing a green Army jacket when she observed him enter Davis's residence twenty to thirty minutes before the police arrived at the scene. *Id.* at 948-49. On cross-examination, Shelley explained that the reason she described the individual she saw in more detail on the day of the murders was because she "probably" remembered the occurrence more accurately on the day it happened. *Id.* at 956-57.

At the post-conviction hearing, McCord testified that he did not generally depose all witnesses in a criminal defense case because there can be disadvantages and advantages to doing so, and he did not want to lock the witnesses into certain testimony. *Id.* at 29. He further testified that his decision whether or not to depose Shelley would have been a trial strategy. *Id.* "Counsel's failure to interview or depose State's witnesses does not, standing alone, show deficient performance." *Williams*, 771 N.E.2d at 74 (Ind. 2002)

(citing *Williams v. State,* 724 N.E.2d 1070, 1076 (Ind. 2000), *cert. denied*, 531 U.S. 1128 (2001)). "The question is what additional information may have been gained from further investigation and how the absence of that information prejudiced his case." *Id.* At trial, McCord was able to question Shelley about her prior inconsistent statement to the police, and Alvies has not shown how deposing Shelley prior to trial would have resulted in additional opportunity to impeach Shelley. Additionally, at trial, Muscar, Alvies then-girlfriend, and two fellow inmates testified that Alvies had admitted to them that he had killed the victims. *Trial Tr.* at 485-87, 968-72, 1082-83. Alvies has not shown how he was prejudiced by McCord's strategic decision to not depose Shelley. We, therefore, conclude that Alvies has not shown that McCord was ineffective for a failure to depose Shelley.

### B.  Alibi Witnesses

[15]  Alvies contends that McCord was ineffective for failing to investigate alibi witnesses. Alvies asserts that there were witnesses at "Tweedy's auto shop" that would have provided an alibi for him on the day of the murders and that McCord should have investigated these witnesses. *Appellant's Br.* at 10. At the post-conviction hearing, McCord, when asked by Alvies why McCord did not use an alibi defense, testified, "We didn't use an alibi defense because you didn't have any alibi and when we discussed it we didn't have anything listed." *P-CR Tr.* at 9. McCord further testified that Alvies's first attorney did not inform McCord that Alvies had mentioned an alibi to him either. *Id.* At the post-conviction hearing, Alvies admitted into evidence an Indiana State Police

Property Record and Receipt showing that the State had possession of a receipt from Auto Zone store number 0640 dated April 3, 2000. *Appellant's App*. at 89. Alvies asserts that this receipt supports his contention that he had an alibi for the time of the murders; however, the receipt was dated April 3 and the murders occurred on April 4.

"[E]stablishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what investigation, if undertaken, would have produced." *McKnight v. State*, 1 N.E.3d 193, 201 (Ind. Ct. App. 2013). "'This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result.'" *Id.* (quoting *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999)). Alvies has not demonstrated what an investigation into his alleged alibi would have produced and how such an investigation would have affected the result of his trial, especially in light of the testimony of three witnesses to whom he confessed to committing the murders. We conclude that McCord was not ineffective for not investigating any alleged alibi witnesses.

### C. Caller ID Box

Alvies argues that McCord was ineffective for failing to object to the admission of State's Exhibit 3, the video depicting the caller ID box from Alvies's residence. He also contends that his trial counsel failed to subpoena "the phone records upon which the caller ID was based." *Appellant's Br*. at 10. Alvies claims that the State did not lay a proper foundation for the admission of State's

Exhibit 3, which was a video showing police officers viewing the caller ID box from the home where Alvies was staying at the time of the murders.[3] The caller ID box reflected two incoming calls to the residence where Alvies was staying, one on April 4, 2000 at 1:38 p.m. from Davis's residence and one on April 11, 2000 from Alvies's phone. *Trial Tr.* at 400. This evidence was used to corroborate testimony from Wilder and Muscar that, shortly before the murders, Alvies was speaking on the phone to Davis and told Davis he would meet him at Davis's house in a few minutes. *Id.* at 643-45, 1071. Alvies asserts that the large gap between calls on the caller ID box brings into question the accuracy of the evidence and creates an inference that the evidence was tampered with.

[18] To demonstrate ineffective assistance of counsel for failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection. *McKnight*, 1 N.E.3d at 202 (citing *Wrinkles v. State,* 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002)). Alvies has not presented any evidence to support his contention that the caller ID box was tampered with and what additional investigation McCord could have done to affect the admission of the evidence.[4]

---

[3] At the time of the trial, this video was the only evidence of the caller ID screen of the phone because the information on the actual phone was lost when the battery on the phone died, and the State was not able to find photographs taken of the caller ID screen. *Trial Tr.* at 396, 399-400.

[4] At the post-conviction hearing, Alvies introduced records from AT&T that he subpoenaed; however, AT&T showed no records were found responsive to his request.

Alvies has also failed to specify what objection McCord could have made regarding State's Exhibit 3 and that such objection would have been sustained. Additionally, the evidence presented at the post-conviction hearing shows that the accuracy of the caller ID box was challenged during trial.

[19] At the post-conviction relief hearing, Officer Carnes testified that neither he nor any other officer deleted any of the calls on the caller ID box before it was videotaped. *P-CR Tr.* at 6. Officer Carnes also stated that the caller ID box was not tampered with before it was videotaped and that he believed it was accurate as shown to the jury at trial. *Id*. at 7. McCord testified that he investigated the caller ID box and there was nothing to object to because the State had laid a proper foundation. *Id*. at 13. He further stated that he had decided to cross-examine Wilder, the owner of the phone, about the accuracy of the caller ID box and had questioned "her pretty vigorously" about whether there were other phone calls on it and whether it had been tampered with. *Id*. at 14. Alvies has not shown that he suffered any prejudice. We, therefore, conclude that Alvies has not established that McCord was ineffective for not objecting to State's Exhibit 3.

### D. *Independent Firearms Examiner*

[20] Alvies contends that McCord was ineffective for failing to hire an independent firearms examiner to examine the two firearms admitted as evidence at trial, but does not specify how an independent examiner could have aided in his defense. At the post-conviction hearing, McCord testified that he did not believe that an independent firearms examiner was necessary to the theory of defense

presented at trial. *P-CR Tr.* at 24. McCord stated that the theory of defense was that Alvies was not the person who killed the victims and that the firearm that killed them could not be tied to Alvies because there were no fingerprints on it. *Id*. at 23-24.

[21] Counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry*, 904 N.E.2d at 308. We believe it was a reasonable strategic decision for McCord not to hire an independent firearms examiner that would have been irrelevant to the theory of defense pursued at trial. Additionally, as Alvies has failed to establish how an independent examiner could have aided in his defense at trial, we find he has not shown any prejudice. McCord was not ineffective for failing to hire an independent firearms examiner.

### E. Pre-Sentence Investigation Report

[22] Alvies claims that McCord was ineffective for failing to object to the pre-sentence investigation report ("the PSI"). He asserts that the PSI contained eight dismissed charges and nine pending charges that the trial court used to enhance his sentence in violation of *Apprendi*, which held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Alvies contends that he was sentenced after *Apprendi* was handed down, and McCord should have objected to the trial court using the dismissed and pending charges contained within the PSI to enhance his sentence.

[23] Although Alvies argues that the trial court used his dismissed and pending charges to enhance his sentence, the evidence establishes that the trial court only relied on Alvies's prior misdemeanor convictions in sentencing him. *Trial Tr.* at 1379, 1384. Relying on prior convictions is a recognized exception to the *Apprendi* doctrine. *Apprendi*, 530 U.S. at 490. Therefore, any objection raised by McCord would not have been sustained, and McCord cannot be found to be ineffective for not raising a meritless objection. *McKnight*, 1 N.E.3d at 202.

## II. Ineffective Assistance of Appellate Counsel

[24] The standard of review for a claim of ineffective assistance of appellate counsel is the same as that for trial counsel. *Massey v. State,* 955 N.E.2d 247, 257 (Ind. Ct. App. 2011) (citing *Bieghler v. State,* 690 N.E.2d 188, 192 (Ind. 1997), *cert. denied,* 525 U.S. 1021 (1998)). The defendant must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different. *Id.* at 257-58 (citing *Overstreet v. State,* 877 N.E.2d 144, 165 (Ind. 2007), *cert. denied,* 555 U.S. 972 (2008)).

[25] As with ineffective assistance of trial counsel claims, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.* at 258 (citing *Timberlake,* 753 N.E.2d at 603). There are three different grounds for claims of ineffective assistance of appellate counsel: (1) counsel's actions denied the defendant access to appeal; (2)

counsel failed to raise issues on direct appeal resulting in waiver of those issues; and (3) counsel failed to present issues well. *Id.* (citing *Wrinkles,* 749 N.E.2d at 1203).

[26] Alvies argues that the post-conviction court erred in denying his petition for post-conviction relief because he received ineffective assistance of appellate counsel for several reasons. He claims that his appellate counsel was ineffective for failing to raise an issue that the trial court abused its discretion in sentencing him because it violated *Apprendi* and *Blakely* in its determination of aggravating factors used to enhance his sentence. Alvies also contends his appellate counsel was ineffective for failing to raise an issue regarding the admission of State's Exhibit 3 and for failing to raise an issue concerning the admission of testimony of Muscar at trial.

## A. *Sentencing Issue*

[27] Alvies asserts that his appellate counsel was ineffective for not challenging Alvies's sentence as a violation of both *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004) because certain aggravating circumstances not determined by a jury were used to enhance his sentence. Specifically, Alvies contends that the trial court erroneously used his dismissed and pending charges as aggravating circumstances, as well as the inference that Alvies had killed Nicholson as a potential witness. Alvies argues that his appellate counsel should have raised this sentencing issue, and if appellate counsel had, Alvies's sentence would have been reduced.

[28] As to Alvies's contention regarding the use of dismissed and pending charges as aggravating factors in violation of *Apprendi* and *Blakely*, the evidence establishes that the trial court only relied on Alvies's prior convictions in sentencing him and not any dismissed or pending charges. *Trial Tr.* at 1379, 1384. Relying on prior convictions is a recognized exception to the *Apprendi* doctrine. *Apprendi*, 530 U.S. at 490. Therefore, had appellate counsel raised this issue on appeal, it is unlikely that this court would have concluded that the trial court abused its discretion in sentencing Alvies or that the result of the appeal would have been different. *Massey*, 955 N.E.2d at 257-58.

[29] As to Alvies's challenge concerning the trial court's use of the fact that Alvies killed Nicholson to eliminate a witness, the trial court mentioned it in looking at the nature and circumstances of the offenses Alvies committed. *Trial Tr.* at 1382-83. However, although the trial court did mention the nature and circumstances of the offenses as an aggravating factor, we do not find that the *Apprendi/Blakely* argument was significant or obvious from the face of the record on appeal. Alvies's direct appeal was decided in 2003, over a year after *Apprendi*, but about a year before *Blakely*. "*Blakely* represented a new interpretation of 'statutory maximum' than that described in *Apprendi*," and Alvies's appellate counsel would have been required to interpret *Apprendi* in a manner that would have predicted the United States Supreme Court's opinion in *Blakely*. *Walker v. State*, 843 N.E.2d 50, 60 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied*, 549 U.S. 1130 (2007). "'[A]ppellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law.'"

*Id.* (quoting *Trueblood v. State,* 715 N.E.2d 1242, 1258 (Ind. 1999), *cert. denied,* 531 U.S. 858 (2000)).  We, therefore, conclude that Alvies's appellate counsel was not ineffective for not raising a sentencing issue regarding the finding of aggravating circumstances.

### B. Admission of the Caller ID Box

[30]  Alvies argues that his appellate counsel was ineffective for not appealing the admission of State's Exhibit 3, the video depicting the caller ID box.  He claims that his appellate counsel should have raised an issue regarding the admission of that evidence because it was altered and false as it did not accurately reflect the calls that came into the phone.  Alvies argues the evidence was unfairly prejudicial and misled the jury to convict him.

[31]  Alvies has failed to specify what evidentiary rule or basis his appellate counsel should have raised in his appeal in an attempt to argue that State's Exhibit 3 was wrongfully admitted.  Further, Alvies has not presented any evidence to support his contention that the caller ID box was tampered with, and to the extent he is arguing that the exhibit was inaccurate, such contention goes to the weight of the evidence and not to its admissibility.  *See McKnight*, 1 N.E.3d at 203 ("Although the defense may rebut the State's evidence regarding accuracy, the question of accuracy is ultimately a question for the trier of fact.").  Additionally, the evidence presented at the post-conviction hearing shows that the accuracy of the caller ID box was challenged during trial through the testimony of Officer Carnes and McCord.  Therefore, the jury was made aware of possible inaccuracy of the caller ID box and was free to weigh that evidence

as it saw fit. Alvies has not shown that any issue concerning the admission of State's Exhibit 3 would have been successful on appeal, and we conclude that he has not shown ineffective assistance of appellate counsel on this issue.

### C. Testimony of Muscar

[32] Alvies asserts that his appellate counsel was ineffective for not raising an issue regarding the veracity of the State's witness, Muscar. Alvies argues that Muscar lied to the police investigating the murders and these alleged lies were used in the probable cause affidavit and that she then changed her statements at trial, admitting she previously lied. Alvies contends that Muscar was not properly impeached and that, if his appellate counsel had raised the issue of her dishonesty on appeal, the outcome of his appeal would have been different.

[33] The evidence at trial shows that the inaccuracies and inconsistencies in Muscar's testimony were explored at trial and presented to the jury. *Trial Tr.* at 1086-1011, 1114. Generally, issues of witness credibility are not available for review on appeal. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). However, the incredible dubiosity rule, in limited circumstances, allows the Court to impinge upon a jury's responsibility to judge the credibility of the witnesses only when confronted with inherently improbable testimony. *Id.* The incredible dubiosity rule is only able to be applied "'where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt.'" *Id.* at 755 (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)). Here, however, Muscar was not the sole witness against Alvies; the State also presented the

testimony of his two fellow inmates, who testified that Alvies admitted to killing the victims. *Trial Tr*. at 485-87, 968-72. Alvies's appellate counsel was not ineffective for not raising a meritless issue on appeal. *Massey,* 955 N.E.2d at 257-58.

## III. Sentencing

[34] Post-conviction proceedings are civil proceedings that provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007) (citing *Conner v. State,* 711 N.E.2d 1238, 1244 (Ind. 1999), *cert. denied*, 531 U.S. 829 (2000)), *cert. denied*, 552 U.S. 1314 (2008). Thus, if an issue was known and available but not raised on direct appeal, the issue is procedurally foreclosed. *Id*. (citing *Timberlake,* 753 N.E.2d at 597). "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id*.

[35] Alvies argues that the trial court abused its discretion in sentencing. He contends that the trial court failed to find mitigating circumstances that were apparent from the record and recommended by the probation department in the PSI. Alvies further asserts that the trial court erred in finding several aggravating circumstance in violation of *Apprendi* and *Blakely*. To the extent that Alvies argues that the trial court abused its discretion in not finding certain mitigating factors, this is a freestanding issue that was known and available at

the time of his direct appeal. Therefore, the issue had to be raised on direct appeal, and because it was not, it was procedurally foreclosed and may not be raised now for the first time on post-conviction relief. *Stephenson*, 864 N.E.2d at 1028. We conclude that Alvies's freestanding claims of error are foreclosed from our review on appeal.

[36] Alvies also argues that the trial court erroneously used aggravating factors to enhance his sentence in violation of *Apprendi* and *Blakely*, which is essentially an argument that those cases should have retroactive application. Our Supreme Court has already addressed this issue and determined that *Blakely* does not apply retroactively to post-conviction appeals because such appeals are neither "pending on direct review" nor "not yet final." *Gutermuth v. State,* 868 N.E.2d 427, 433-35 (Ind. 2007) (determining that defendant's case is final for *Blakely* purposes when time for filing direct appeal has expired). The *Gutermuth* Court reasoned that this result "recognizes the importance of finality without sacrificing fairness." *Id.* at 434. We, therefore, conclude that the post-conviction court did not err in denying Alvies's petition for post-conviction relief.

[37] Affirmed.

[38] May, J., and Crone, J., concur.