## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 19 2017, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Beverly Bourn Marker
Camby, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Bonds,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

July 19, 2017

Court of Appeals Case No.
49A02-1608-PC-1943

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge

The Honorable Stanley E. Kroh, Magistrate

Trial Court Cause No.
49G03-1009-PC-74984

**Crone, Judge.**

# Case Summary

Mark Bonds appeals the denial of his petition for postconviction relief ("PCR"). He raises several freestanding claims of error, maintains that he was denied his constitutional right to effective assistance of counsel, and challenges the postconviction court's denial of his motion for new DNA testing. Finding that he waived his freestanding claims of error and that he failed to establish ineffective assistance of counsel or error in the denial of his motion for new DNA testing, we affirm.

# Facts and Procedural History

The relevant facts as summarized in an unpublished memorandum decision in Bonds's direct appeal read in pertinent part as follows:

> Bonds began dating D.C.'s mother when D.C. was eleven years old. When D.C. was twelve years old, she told her mother that Bonds had molested her, and the couple broke up. D.C. later recanted, and the couple resumed dating when D.C. was thirteen years old.
>
> In 2010, D.C. was thirteen, and Bonds was twenty-four years old. D.C.'s family had a two-bedroom, two-story apartment. D.C. and her brother each had a bedroom upstairs, and their mother slept downstairs. On September 10, D.C. slept with her younger brother, D.V., because her bed was covered with clothes, and Bonds stayed overnight with their mother downstairs. Early the next morning, Bonds went upstairs and, using his cell phone to illuminate the room, looked in on the children, who were still sleeping. The light from the cell phone woke D.C. Bonds uncovered her, pulled down her shorts and underwear, and placed his mouth on her vagina. Bonds then had

intercourse with D.C. D.C. cried, told Bonds "no" and that "the Devil is a liar," but he did not stop. At some point, D.V. also woke. When Bonds left the room, D.C. put her underwear and shorts back on.

D.C.'s mother saw Bonds come down the stairs at approximately 5:30 that morning. She noticed that he looked sweaty, and Bonds told her he had been sick in the bathroom upstairs. The home also contained a bathroom downstairs. The mother went to retrieve a towel and spoke to D.V., who told her what Bonds had done to D.C.

After Bonds left the house, the mother asked D.C. what had happened, and D.C. related what Bonds had done that morning and that Bonds had molested her the prior week, too. The mother then telephoned the police. D.C. was given a rape kit examination. The vaginal swab revealed spermatozoa matching Bonds' DNA profile, but the test also showed another DNA contributor besides D.C. and Bonds. Additionally, amylase, a substance in saliva, was found in the crotch of D.C.'s underwear. The amylase also matched Bonds' DNA profile. Additional tests revealed that substantial amounts of D.C.'s DNA were found on Bonds' hands.

On September 30, the State charged Bonds with three counts of child molesting, as Class A felonies; six counts of child molesting, as Class C felonies; two counts of criminal confinement, as Class C felonies; one count of strangulation, as a Class D felony; and one count of battery, as a Class D felony. On January 5, 2011, the court granted the State's motion to amend the information to add five counts of child molesting, as Class A felonies, and two counts of child molesting as Class C felonies, for a total of twenty counts. At the conclusion of the trial, the trial court granted Bonds' motion for judgment on the evidence on ten counts, the jury found Bonds guilty of four counts, and the jury found Bonds not guilty on the remaining six

counts. However, the trial court subsequently granted Bonds' motion for a mistrial due to juror misconduct.

On October 29 through 31, 2012, a second jury trial was held on the six counts on which the first jury had found Bonds guilty: four counts of child molesting, as Class A felonies, and two counts of child molesting, as Class C felonies. The jury found Bonds guilty of two counts of Class A felony child molesting and one count of Class C felony child molesting. At sentencing, the trial court did not enter judgment of conviction on the Class C felony count on double jeopardy grounds. The court found the aggravators and mitigators to balance and sentenced Bonds to concurrent thirty-year terms with five years suspended, three years of the suspended portion to be served on sex offender probation, and ordered Bonds not to have any contact with the victim or her family.

*Bonds v. State*, No. 49A02-1212-CR-974, 2013 WL 2407101, at *1-2 (Ind. Ct. App. June 4, 2013) (citations omitted), *trans. denied*.

[3] Bonds filed a direct appeal, challenging the sufficiency of the evidence to support his convictions. Finding the evidence sufficient, another panel of this Court affirmed his convictions.

[4] In September 2013, Bonds filed a petition for postconviction relief. He requested and received pauper counsel, but counsel subsequently withdrew its representation. In 2015, acting pro se, he filed three amendments to his PCR petition, a motion for summary judgment, a motion to compel production of DNA samples for independent testing, and a request to subpoena certain witnesses. The postconviction court denied his motion for production of DNA,

his motion for summary judgment, and his request for subpoenas, finding that the witnesses were not proper witnesses and that Bonds had failed to file an affidavit in support of his subpoena request. At the evidentiary hearing, Bonds offered exhibits, many of which the court declined to admit, but did not present any witness testimony. He indicated a desire to submit more documentation to the court, and the court allowed him an additional three months to file affidavits. In July 2016, the postconviction court issued an order with findings of fact and conclusions of law denying Bonds's PCR petition. Bonds filed a motion to reconsider, which was also denied.

Bonds now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Bonds contends that the postconviction court erred in denying his PCR petition. The petitioner in a postconviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the postconviction court must make findings of fact and conclusions of law. Ind. Post-Conviction Rule 1(6). A petitioner who appeals the denial of his postconviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct.

App. 2013), *trans. denied* (2014). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a postconviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253.

[7] Postconviction relief does not offer the petitioner a super appeal; rather, subsequent collateral challenges must be based on grounds enumerated in the postconviction rules. *McKnight*, 1 N.E.3d at 199. These rules limit the scope of relief to issues unknown or unavailable to the petitioner on direct appeal. *Id.* Where, as here, the judge who presided over the defendant's trial is also the judge who presided over his postconviction proceedings, the postconviction court's findings and judgment should be entitled to "greater than usual deference." *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014).

[8] At the outset, we note that Bonds chose to proceed pro se, both in the PCR proceedings below and in filing his initial appellant's brief in this appeal.[1] It is well settled that pro se litigants are held to the same legal standards as licensed

---

[1] Bonds retained representation after he filed his initial appellant's brief, and his reply brief was written and submitted by counsel.

attorneys.  *Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016), *trans. denied* (2017).  This means that they must follow our established rules of procedure and accept the consequences when they fail to do so.  *Id.*  It is not the court's role to become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood."  *Id.*

## Section 1 – Bonds's freestanding claims of error are unavailable for consideration in postconviction proceedings.

[9]    Bonds raises freestanding claims of (1) trial court error in the admission of evidence; and (2) prosecutorial misconduct for "introduc[ing] false documents and failing to disclose a full chain of custody report and intentionally using purjured [sic] testimony of State witnesses; also purjurying [sic] closing argument about evidence results."  Appellant's Br. at 15.  Because these claims were not demonstrably unavailable at the time of Bonds's direct appeal, they are not available as freestanding claims in a petition for postconviction relief.  *Saylor v. State*, 55 N.E.3d 354, 359 (Ind. Ct. App. 2016), *trans. denied*.  This is true even where the postconviction petitioner characterizes the freestanding claims as fundamental error.  *See Stephenson v. State*, 864 N.E.2d 1022, 1029 (Ind. 2007) (where defendant did not object at trial and issue was not raised on direct appeal, he is foreclosed from raising issue in postconviction proceeding as freestanding claim of error, whether "fundamental" or otherwise).  *See also Lindsey v. State*, 888 N.E.2d 319, 325 (Ind. Ct. App. 2008) (postconviction petitioner may raise claim for first time in PCR petition only if claim is for ineffective assistance of counsel or an issue demonstrably unavailable at trial or

on direct appeal), *trans. denied*. Bonds is foreclosed from raising his freestanding claims, even when couched in terms of fundamental error.

## Section 2 – Bonds was not denied his constitutional right to effective assistance of trial counsel.

[10] Bonds also maintains that he was denied his constitutional right to effective assistance of trial counsel ("Counsel"). To prevail on an ineffective assistance claim, Bonds must satisfy two components: he must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989 N.E.2d at 770. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Hinesley*, 999 N.E.2d at 983.

Bonds asserts that Counsel was ineffective in failing to conduct a reasonable investigation, in not calling certain witnesses during trial, and in not objecting during closing argument. When deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690-91.

Because success on the prejudice prong of an ineffective assistance claim requires a showing of a reasonable probability of a different result, establishing failure to investigate as a ground for ineffectiveness "requires going beyond the trial record to show what investigation, if undertaken, would have produced." *McKnight*, 1 N.E.3d at 201 (citing *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied* (1999)).

Here, Bonds neither called Counsel as a witness to testify at the PCR hearing nor introduced any evidence from Counsel by affidavit or otherwise. Thus, we have no indication as to the extent of Counsel's actual investigation. When a PCR petitioner does not call Counsel to testify as a witness, the postconviction

court may infer that Counsel would not have corroborated the petitioner's allegations. *Oberst v. State*, 935 N.E.2d 1250, 1254 (Ind. Ct. App. 2010), *trans. denied* (2011). Similarly, Bonds neither testified nor presented evidence outside the trial record to show what evidence a more thorough investigation by Counsel would have produced. As such, he has failed to establish that Counsel performed deficiently concerning the extent of his investigation.

[14] As for Bonds's allegation of Counsel's deficient performance based on not calling certain witnesses to testify, the decision concerning "which witnesses to call is the epitome of a strategic decision." *Wrinkles v. State*, 749 N.E.2d 1179, 1200 (Ind. 2001) (quoting *Wisehart v. State*, 693 N.E.2d 23, 48 n.26 (Ind. 1998)). *See also Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998) ("A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess"). Again, the fact that Counsel did not testify at the PCR hearing has resulted in a total absence of evidence as to his thought process in selecting which witnesses to call during Bonds's trial. Bonds has failed to establish that Counsel performed deficiently in his selection of witnesses.

[15] Bonds has likewise failed to establish ineffective assistance in Counsel's failure to object to certain statements made by the prosecutor during closing argument. In addressing this argument, we first observe that Bonds has incorrectly characterized the prosecutor's statements as perjured. *See* Appellant's Br. at 15 ("purjurying [sic] closing argument"). Since the prosecutor was not under oath, his statements cannot amount to perjury. *See* Ind. Code § 35-44.1-2-1(a)(1) (requiring proof of a knowingly "false, material statement under oath or

affirmation" to establish perjury). To establish ineffective assistance of counsel due to the failure to object, the petitioner must prove that an objection would have been sustained if made and that he was prejudiced by Counsel's failure to do so. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010). Here, Bonds challenges Counsel's failure to object to the prosecutor's closing argument comment that DNA testing indicated the presence of amylase, a substance found in saliva, in the crotch of the victim's underwear and that the testing showed amylase consistent with Bonds's DNA profile. However, Bonds did not offer the record from his original trial into evidence at his PCR hearing and, although it appears that the postconviction court took judicial notice of it sua sponte, the record is not included in the materials submitted in this appeal.[2] "The appellant bears the burden to present a record that is complete with respect to the issues raised on appeal, and this burden includes a duty to ensure that th[is] court has a transcript of the appropriate trial proceedings." *Perez-Grahovac v. State*, 894 N.E.2d 578, 585 (Ind. Ct. App. 2008), *trans. denied* (2009). Bonds did not meet his burden of ensuring that we received the transcript from his trial. With no transcript and no witness testimony, we have no means of reviewing whether an objection, if made, would have been sustained. *See Mitchell v. State*, 946 N.E.2d 640, 644-45 (Ind. Ct. App. 2011) (petitioner who

---

[2] In *Mitchell v. State*, we emphasized the importance of the petitioner offering his original trial record into evidence during the PCR hearing, and concluded that where the petitioner fails to offer it into evidence, the 2010 amendment to Indiana Evidence Rule 201(b)(5) allows the postconviction court, on petitioner's motion or sua sponte, to judicially notice the transcript of evidence from the petitioner's underlying criminal proceedings to evaluate ineffective assistance claims. 946 N.E.2d 640, 644-45 (Ind. Ct. App. 2011), *trans. denied*.

did not offer his trial record into evidence and neither asked the postconviction court to take judicial notice of trial record nor called any witnesses at his PCR hearing failed to meet his burden of proof on his ineffective assistance claims), *trans. denied*.

[16]     Bonds bore the burden of proving his ineffective assistance claims. Yet he did not call Counsel or any other witnesses to testify during the PCR hearing. He himself did not testify, and he did not introduce his trial record or submit it in this appeal. His arguments of ineffective assistance of Counsel are unsupported by evidence. Bonds has failed to overcome the presumption that Counsel performed effectively.

## Section 3 – The trial court did not clearly err in denying Bonds's petition for additional DNA testing.

[17]     Finally, Bonds contends that the trial court clearly erred in denying his petition for additional DNA testing. Indiana Post-Conviction Rule 1(d) states,

> A petition filed by a person who has been convicted or sentenced for a crime by a court of this state that seeks to require forensic DNA testing or analysis of any evidence, whether denominated as a petition filed pursuant to Ind. Code § 35-38-7-5 or not, is considered a Petition for Post-Conviction Relief.

Because a petitioner's request for DNA testing is considered a petition for postconviction relief, he is subject to the same burden of proof as other PCR petitioners. *See* Ind. Post-Conviction Rule 1(5) (petitioner must establish

grounds for relief by a preponderance of evidence). Likewise, he is subject to the same standard of appellate review. *See Massey*, 955 N.E.2d at 253.

[18] Indiana Code Section 35-38-7-5 states in pertinent part that "[a] person who was convicted of and sentenced for an offense may file a written petition with the court that sentenced the petitioner for the offense to require the forensic DNA testing and analysis of any evidence" in the court's or State's possession or in the Indiana DNA database, that is related to the petitioner's prosecution/investigation resulting in his conviction, and that may contain biological evidence. Indiana Code Section 35-38-7-8 reads as follows with respect to a PCR petitioner's burden of proof when requesting DNA testing:

> After complying with section 7 of this chapter, the court shall determine whether the petitioner has presented prima facie proof of the following:
>
> (1) That the evidence sought to be tested is material to identifying the petitioner as:
>
> (A) the perpetrator of; or
>
> (B) an accomplice to;
>
> the offense that resulted in the petitioner's conviction.
>
> (2) That a sample of the evidence that the petitioner seeks to subject to DNA testing and analysis is in the possession or control of either:
>
> (A) the state or a court; or
>
> (B) another person, and, if this clause applies, that a sufficient

chain of custody for the evidence exists to suggest that the evidence has not been substituted, tampered with, replaced, contaminated, or degraded in any material aspect.

(3) The evidence sought to be tested:

(A) was not previously tested; or

(B) was tested, but the requested DNA testing and analysis will:

(i) provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice; or

(ii) have a reasonable probability of contradicting prior test results.

(4) A reasonable probability exists that the petitioner would not have:

(A) been:

(i) prosecuted for; or

(ii) convicted of;

the offense; or

(B) received as severe a sentence for the offense;

if exculpatory results had been obtained through the requested DNA testing and analysis.

[19]     As best we can discern, Bonds seeks additional DNA testing to settle conflicting testimony concerning the previous DNA test results. *See* Appellant's Br. at 26-27 ("DNA re-testing … will contradict [the State's DNA expert's] testimony

about the results and show that [the witness] purjured [sic] her testimony … to help [the] state to get a conviction."). In other words, he seeks a tiebreaking result as between his witness and the State's witness. However, he failed to introduce probative evidence to support a finding that additional testing will "provide results that are reasonably more discriminating and probative of the identity of the perpetrator" or "have a reasonable probability of contradicting prior test results." Ind. Code § 35-38-7-8(3)(B)(i), -(ii). He also failed to present evidence to show a reasonable probability that he would not have been convicted had the "exculpatory results had been obtained through the requested DNA testing and analysis." Ind. Code § 35-38-7-8(4)(A)(ii).

[20] In short, Bonds's arguments lack evidentiary support and amount to requests to reweigh evidence and reassess witness credibility, which we may not and will not do. *McKnight*, 1 N.E.3d at 199. The postconviction court did not clearly err in denying his request for additional DNA testing. Accordingly, we affirm.

[21] Affirmed.

Baker, J., and Barnes, J., concur.