## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2020, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Genaro Garcia
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Genaro Garcia,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 24, 2020

Court of Appeals Case No.
19A-PC-1127

Appeal from the Greene Circuit Court

The Honorable Erik C. Allen, Judge

Trial Court Cause No.
28C01-1808-PC-2

**Pyle, Judge.**

# Statement of the Case

Genaro Garcia ("Garcia") appeals from the post-conviction court's denial of his petition for post-conviction relief. Garcia argues that the post-conviction court erred by: (1) adopting the State's proposed findings of fact and conclusions of law; and (2) denying him post-conviction relief on his claims of ineffective assistance of trial counsel. Concluding that there was no error on either assertion, we affirm the post-conviction court's judgment.

We affirm.

# Issues

1. Whether the post-conviction court erred by adopting the State's proposed findings of fact and conclusions of law

2. Whether the post-conviction court erred by denying post-conviction relief on Garcia's claims of ineffective assistance of trial counsel.

# Facts

The facts of Garcia's crime were set forth in the memorandum decision from his direct appeal as follows:

> The facts most favorable to the verdict reveal that in June 2015, Brandy Corlett, ("Mother"), drove her five-year-old daughter, E.T. ("E.T."), and forty-five-year-old Garcia, a long-time family friend, from Spencer to Solsberry to visit family and friends. They stopped at the trailer where Mother's sisters, Shelby ("Shelby") and Sara ("Sara") Newton (collectively "the Newtons"), lived with Sara's boyfriend, Cameron Marling

("Marling"). An intoxicated Garcia was drinking from a half-gallon bottle of vodka. Shortly after arriving in Solsberry, Mother went out with Sara and left E.T. with Garcia at the Newtons' trailer. Shelby took a nap, and Marling went to a back bedroom to watch television.

While Mother was out, Garcia decided to walk down the lane and visit some friends who lived in a nearby trailer. E.T. followed Garcia, and when they reached a tree-lined area, Garcia pulled E.T. to the side of the lane, sat her down, pushed her underwear to the side, and licked her vagina. Thereafter, E.T. followed Garcia to Garcia's friend's trailer. Garcia entered the trailer but made E.T. wait outside. E.T. subsequently ran back to the Newtons' trailer. Alan Dixon ("Dixon"), who was sitting on his front porch, noticed a crying E.T. run by his trailer. Janice Corbin's video camera on the exterior of her trailer also filmed E.T. running down the lane.

When she arrived at the Newtons' trailer, E.T. "busted through the door . . . and was hysteric[al]." (Tr. 321). When Marling asked E.T. what was wrong, she responded that Garcia "licked her . . . and . . . grabbed her vagina area." (Tr. 331). Marling, who went searching for Garcia and found him at the friend's trailer, punched Garcia twice. Garcia asked "what was that for," and Marling responded, "you know what that was for." (Tr. 332). Garcia did not respond.

Marling called Mother to tell her what had happened, and Mother quickly returned to the Newtons' trailer. As soon as Mother pulled up in front of the trailer, a crying E.T. ran out to the car. Mother went to look for Garcia and found him walking down the lane with a baseball bat. Mother jumped out of the car and told him that he was going to go to jail. After he told her that he had not done anything, Mother grabbed the baseball bat and began hitting him with it.

Green County Sheriff's Department Deputy Brian Woodall ("Deputy Woodall") was dispatched to the Newtons' trailer,

where he arrested an intoxicated Garcia. In the meantime, Mother drove E.T. to St. Vincent Hospital in Indianapolis. Sexual assault nurse examiner Megan Merriman, ("Nurse Merriman"), who has special training in assessing and examining child sexual abuse victims, met with E.T. Nurse Merriman discussed the sexual abuse with E.T. and explained that she was a nurse who was there to help E.T. The five-year-old girl told Nurse Merriman that she had taken a walk with Garcia, and he had told her "to show [her] pee pee and then he started licking [her] butt. [She] told him to stop it and he didn't stop. . . ."[1] (Tr. 412-13). Nurse Merriman also collected E.T.'s one-piece dress that snapped at the crotch and took swabs from her genitals. The genital swabs tested positive for amylase, which is found in saliva and other body fluids, and the crotch of the dress contained DNA that was consistent with Garcia's DNA.

The State charged Garcia with Level 1 felony child molesting on August 3, 2015, and on September 21, 2015, the trial court set Garcia's jury trial for December 1, 2015. In October 2015, the State filed a motion for a continuance because Nurse Merriman, a critical State's witness, was on maternity leave until the end of January 2016. The trial court granted the motion and scheduled the trial for February 9, 2016. Three days later, Garcia filed a motion for a speedy trial [under Criminal Rule 4(B)(1)[2]], which would have required the State to try him by January 4, 2016. The State responded with a Criminal Rule 4(D) motion asking the trial court to "reaffirm the February 9th trial date due to the State's essential witness being unavailable for trial during the 70-day speedy trial window." (App. 74). The trial court granted the State's motion after a hearing.

---

[1] E.T. referred to her vagina as both her "pee pee" and her "butt." (Tr. 413).

[2] Under Criminal Rule 4(B)(1), a defendant moves for an "early trial" within "seventy (70) calendar days from the date of such motion[,]" and the rule contains certain exceptions.

Garcia's trial began as scheduled on February 9, 2016. Before E.T. gave her substantive testimony at trial, the State asked her several questions to demonstrate her competency. Thereafter, E.T. testified that Garcia moved her underwear to the side and "licked her . . . private parts . . . ." (Tr. 252). Also at trial, Garcia made a hearsay objection to Marling's testimony that E.T. had told him that Garcia had "licked her . . . and . . . grabbed her vagina area." (Tr. 331). Garcia also made a hearsay objection to Nurse Merriman's testimony that E.T. had told her that Garcia had told E.T. to "show [her] pee pee and then he started licking [her] butt." (Tr. 412).

*Garcia v. State*, No. 28A01-1604-CR-762 *1-2 (Ind. Ct. App. May 25, 2017), (footnote 1 above appearing in the opinion as footnote 2; footnote 2 above added), *trans. denied*.

[4] When Garcia's counsel[3] cross-examined E.T., counsel asked the child about whether she had previously been in the courtroom. After E.T. stated that she had been in the courtroom the week before the trial, Garcia's counsel asked her who had been in the courtroom with her, whether she had practiced what she needed to say at trial, and whether the prosecutor had instructed her about what to say and how to say it. Thereafter, the prosecutor informed the trial court that it was going to call Julie Criger ("Criger"), who was an investigator with the prosecutor's office, as a witness due to Garcia's counsel's suggestion that the prosecutor had coached E.T. about her testimony. The prosecutor stated that

---

[3] At trial, Garcia was represented by James Riester ("Trial Counsel Riester") and Ellen Martin ("Trial Counsel Martin"). Trial Counsel Martin conducted the cross-examination of E.T.

Criger had been present in the courtroom when he was there with E.T. the prior week. Garcia's counsel objected, stating that Criger had not been on the State's witness list. The prosecutor stated that he had not planned on calling Criger as a witness until Garcia had opened the door to her testimony. The trial court overruled Garcia's objection and allowed Criger to testify. Criger testified that she had been in the courtroom the prior week when the prosecutor had been there with E.T. and that at no time did anyone tell E.T. what to say. Criger also testified that it was a common practice to take a child into a courtroom prior to a trial to make the child comfortable and familiarize the child with the setting. Garcia's counsel did not cross-examine Criger.

> Following a four-day trial, the jury convicted Garcia of child molesting as a Level 1 felony. Evidence presented at the sentencing hearing revealed that Garcia has an extensive legal history that spans four states and almost thirty years. He has six felony and eleven misdemeanor convictions and has been twice unsatisfactorily terminated from probation. In addition, he was on parole when he molested E.T. After hearing the evidence, the trial court found no mitigating factors and the following aggravating factors: (1) E.T.'s age; (2) Garcia's position of trust with E.T.; (3) Garcia's probation violations; and (4) the fact that Garcia was on parole when he molested E.T. The trial court sentenced Garcia to forty (40) years.

*Garcia*, No. 28A01-1604-CR-762 at *2.

On direct appeal, Garcia raised five arguments. Specifically, he argued that: (1) the trial court abused its discretion when it granted the State's Indiana Criminal Rule 4(D) motion to continue the trial; (2) the trial court abused its

discretion by admitting Marling's and Nurse Merriman's testimony recounting the child victim's statement that Garcia had licked her vagina; (3) the trial court committed fundamental error when it admitted the child victim's testimony without first determining whether she was a competent witness; (4) there was insufficient evidence to support his conviction; and (5) his sentence was inappropriate. In May 2017, our Court issued a memorandum decision, affirming Garcia's conviction and sentence. In relevant part, we held that the trial court had not abused its discretion by determining that Nurse Merriman was an unavailable witness and granting the State's Rule 4(D) motion to continue the trial. *Garcia*, No. 28A01-1604-CR-762 at *4. We also held that Marling's testimony had been admissible under the excited utterance hearsay exception and that Nurse Merriman's testimony had been admissible under the hearsay exception for medical diagnosis and treatment. *Id.* at *5-6. Additionally, we explained that the child victim's competency had been established prior to her testimony and that there was "no error, fundamental or otherwise." *Id.* at *6.

[6] Subsequently, in August 2018, Garcia filed a pro se petition for post-conviction relief, raising approximately twenty claims of ineffective assistance of trial counsel.[4] He alleged, in relevant part, that his trial counsel had rendered ineffective assistance by failing to: (1) file a motion to suppress the probable

_____

[4] Garcia also raised numerous claims of ineffective assistance of appellate counsel. Garcia, however, did not call his appellate counsel as a witness at the post-conviction hearing and does not raise any claims of ineffective assistance of appellate counsel in this appeal.

cause affidavit and arrest warrant; (2) depose the State's expert scientific witnesses and file a motion to exclude the DNA evidence; (3) object that the State had failed to establish that Nurse Merriman was an unavailable witness; (4) litigate Garcia's speedy trial rights under Criminal Rule 4(A);[5] (5) object to or move for a mistrial for the State leading the child victim and the child victim's "incompetent" testimony; (6) file a motion for mistrial or dismissal when Julie Criger testified regarding whether the child victim's testimony had been coached; and (7) move for a continuance or a severance to prepare for the State's "surprise witness" testimony. (App. Vol. 2 at 75).

[7] In January 2019, the post-conviction court held a hearing on Garcia's post-conviction petition. During the hearing, Garcia represented himself pro se and

---

[5] Criminal Rule 4(A) provides:

> **(A) Defendant in Jail.** No defendant shall be detained in jail on a charge, without a trial, for a period in aggregate embracing more than six (6) months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later); except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall make such statement in a motion for continuance not later than ten (10) days prior to the date set for trial, or if such motion is filed less than ten (10) days prior to trial, the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so detained shall be released on his own recognizance at the conclusion of the six-month period aforesaid and may be held to answer a criminal charge against him within the limitations provided for in subsection (C) of this rule.

called Trial Counsel Riester as a witness. Pursuant to Garcia's request, the post-conviction court took judicial notice of the trial record.

[8] Trial Counsel Riester testified that he had forty-five years of experience working in criminal law and that he had "spent hundreds of hours" working on Garcia's case in the months prior to trial. (Tr. Vol. 2 at 20). He testified that he and another attorney had worked on Garcia's case. Trial Counsel Riester also explained that he was unable to answer specific details about his trial preparation because he had given Garcia his case file when Garcia had requested it.

[9] When Garcia questioned Trial Counsel Riester about his investigation of the probable cause affidavit, Garcia asked Trial Counsel Riester why he had not filed a motion to suppress the probable cause affidavit based on hearsay statements from Shelby Newton that were in the affidavit. Trial Counsel Riester responded that there was "no legal basis" to file a motion to suppress. (Tr. Vol. 2 at 61). Trial counsel told Garcia that the State had established probable cause with E.T.'s testimony that had been included in the probable cause affidavit.

[10] Garcia also questioned Trial Counsel Riester about his pretrial investigation of the DNA expert and DNA evidence. Garcia pointed to Trial Counsel Riester's cross-examination of the DNA expert and how Trial Counsel Riester elicited testimony from her that was favorable to Garcia's defense. Garcia then asked Trial Counsel Riester how he had "investigate[d]" and prepared for the DNA

witness. (Tr. Vol. 2 at 43). Trial Counsel Riester responded that he had "hired an expert [who] had a Ph.D. in forensic medicine to talk to [Trial Counsel Riester] about what all of these tests that were done, how to interpret them in the case[,] and . . . subpoenaed [the expert] as a witness and had him interpret all of these to the jury." (Tr. Vol. 2 at 43). When Garcia asked Trial Counsel Riester why he had not moved to exclude the DNA evidence, Trial Counsel Riester explained that the evidence was relevant and that there was no legal basis to exclude the evidence. Trial Counsel Riester further testified that the DNA expert's testimony "that she couldn't find [Garcia's] DNA on the [victim's] clothing helped us" and that he did not want to exclude "evidence that tends to be exculpatory in nature[.]" (Tr. Vol. 2 at 50, 52). Trial Counsel Riester further explained:

> Well, my principal strategy was when you look at all of the DNA evidence and all the amylase evidence, I had an expert with a Ph.D. in Forensic Study get on the stand and say, unless there is DNA from the Defendant and amylase in the same sample, there is no way that he could have done this. That was my strategy. And he said that. That's exactly what he said, if you, if you examined the DNA evidence and amylase evidence, and the evidence that the State presented in court, demonstrates that it couldn't have been him. That it couldn't have happened the way that she said. That's what he testified to. That was my strategy.

(Tr. Vol. 2 at 51).

[11]    When discussing the State's extension sought under Criminal Rule 4(D), Garcia asked Trial Counsel Riester why he had not objected to the State's assertion that Nurse Merriman was an unavailable witness. Trial Counsel

Riester replied that he had objected and had argued that Nurse Merriman's recent childbirth did not make her an unavailable witness but that the trial court had overruled his objection. Garcia also asked Trial Counsel Riester why he had not suggested that Nurse Merriman could have testified from home via telephone or video, and counsel explained that he did not like remote testimony during a jury trial and did not think it was in Garcia's best interests.

[12] Garcia also asked Trial Counsel Riester why he had not objected to a violation of Garcia's rights under Criminal Rule 4(A), which limits the amount of time that a defendant may be held in jail pending trial. Garcia asserted that he should have been released in late January pending his February 9th trial. Counsel stated that he could not recall a reason for not objecting. When Garcia questioned Trial Counsel Riester about why he had not objected to the lack of a pre-trial competency hearing for the child victim, Trial Counsel Riester testified that he had not questioned her competency because he had believed that she had known the difference between right and wrong.

[13] At the end of the hearing, the post-conviction court gave the parties the option to submit proposed findings and conclusions within thirty days. Thereafter, the post-conviction court, pursuant to Garcia's request, granted Garcia an extension of time until May to file his proposed findings and conclusions. In late February, Garcia filed a motion to disregard his extension request, and he did not submit proposed findings or conclusions.

[14] In April 2019, the post-conviction issued an order denying Garcia's petition for post-conviction relief. Garcia now appeals.

# Decision

[15] Garcia argues that the post-conviction court erred by: (1) adopting the State's proposed findings of fact and conclusions of law; and (2) denying him post-conviction relief on his claims of ineffective assistance of trial counsel. We will address each argument in turn.

[16] At the outset, we note that Garcia has chosen to proceed pro se. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. Thus, pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Id.* "We will not become a party's advocate, nor will we address arguments that are inappropriate, improperly expressed, or too poorly developed to be understood." *Barrett v. State*, 837 N.E.2d 1022, 1030 (Ind. Ct. App. 2005), *trans. denied*.

## 1. Findings and Conclusions

[17] We first address Garcia's argument that the post-conviction court erred by adopting the State's proposed findings and conclusions. We note that Garcia has not included a copy of the State's proposed findings and conclusions in his Appendix, thereby impeding our appellate review of his challenge as we are unable to compare the State's proposed findings with the post-conviction

court's order. Nevertheless, even if the post-conviction court adopted the State's findings and conclusions, our supreme court has explained that "[i]t is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party." *Prowell v. State*, 741 N.E.2d 704, 708 (Ind. 2001). Indeed, a post-conviction court's "verbatim adoption of a party's proposed findings may have important practical advantages[,]" and our supreme court has "expressly declined to prohibit the practice." *Stevens v. State*, 770 N.E.2d 739, 762 (Ind. 2002) (citing *Prowell*, 741 N.E.2d at 708-09), *reh'g denied*, *cert. denied*. While our supreme court does "not encourage post-conviction court judges to adopt wholesale the findings and conclusions of either party," our appellate courts "decline to find bias solely on that basis." *Pruitt v. State*, 903 N.E.2d 899, 940 (Ind. 2009) (internal quotation marks and citation omitted), *reh'g denied*. Instead, the "critical inquiry is whether the findings adopted by the court are clearly erroneous." *Id.*

[18] Garcia contends that the post-conviction order is erroneous because it did not address his claim that trial counsel had rendered ineffective assistance by failing to object to the State's discussion of DNA evidence during its closing argument. Garcia, however, did not raise this claim in his post-conviction petition. "Any '[i]ssues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal.'" *Stevens*, 770 N.E.2d at 746 (quoting *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001), *reh'g denied*, *cert. denied*) (alteration in original). *See also* Ind. Post-Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original

petition."). Accordingly, the post-conviction order is not erroneous based on the absence of a finding about this claim.[6]

[19] Garcia also contends that the post-conviction order contains an erroneous finding regarding his "surprise witness" claim. (Garcia's Br. 43). When the post-conviction court addressed Garcia's claim that trial counsel had rendered ineffective assistance by failing to move for a continuance to prepare for the State's surprise witness's testimony, it found that Garcia had "not pointed to a specific State witness whose testimony prejudiced him by not allowing him to prepare for cross-examination or how he was otherwise surprised by the witness's appearance at trial." (App. Vol. 2 at 90). We recognize that, during the post-conviction hearing, Garcia mentioned Julie Criger as the surprise witness and questioned Trial Counsel Riester about why he had not moved for a continuance or objected to Criger's testimony. Trial Counsel Riester explained that he had not moved for a continuance because he had been prepared for trial and because there had been nothing inappropriate about her testimony. On appeal, Garcia does not argue that he was prejudiced by Criger's testimony or that he is otherwise entitled to post-conviction relief on this claim of ineffective assistance of counsel; instead, he argues only that the post-conviction court erred by not recognizing that the surprise witness was Criger.

---

[6] We note that, during the post-conviction hearing, Garcia asked Trial Counsel Riester about his lack of objection to the State's closing argument. Trial Counsel Riester did not recall any specific reason for not objecting but stated that he "certainly in closing argued to the contrary." (Tr. Vol. 2 at 53). In his Appellant Brief, Garcia does not argue that Trial Counsel Riester's strategy to address the DNA evidence during the defense closing argument constituted deficient performance or prejudiced him.

Thus, Garcia has not shown that the post-conviction court erred by adopting the State's proposed findings and conclusions.[7]

## 2. Ineffective Assistance of Counsel

[20] Next, we turn to Garcia's argument that the post-conviction court erred by denying him post-conviction relief on his claims of ineffective assistance of trial counsel. Our standard of review in post-conviction proceedings is well settled.

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads

---

[7] We also reject Garcia's other assertions of error by the post-conviction court. He mentions that the post-conviction court erred by denying a motion for default judgment and a motion to strike. Garcia did not include these motions or the post-conviction court's order on these motions in his appellate appendix. Moreover, he fails to make a cogent argument to explain how the post-conviction court's rulings were erroneous. Accordingly, he has waived these arguments. *See* Ind. App. Rule 46(A)(8)(a). *See also Griffith v. State*, 59 N.E.3d 947, 958 n.5 (Ind. 2016) (noting that the defendant had waived his arguments by failing to provide cogent argument). Additionally, Garcia has waived his contention that the post-conviction court somehow "misled" him during a March 2019 hearing about whether he needed to file proposed findings and conclusions. (Garcia's Br. 46). Garcia did not request a transcription of the March 2019 hearing; thus, we cannot review his allegation of error. Moreover, the record on appeal shows that, at the end of the post-conviction hearing, the post-conviction court informed Garcia that he could file proposed findings and conclusions if he so chose. The post-conviction court granted Garcia an extension to file his proposed findings and conclusions, but then in late February 2019, Garcia filed a motion to disregard his extension request, and he did not submit proposed findings or conclusions.

> unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal case citations omitted), *trans. denied.* Additionally, "[w]e will not reweigh the evidence or judge the credibility of the witnesses; we examine only the probative evidence and reasonable inferences that support the decision of the post-conviction court." *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007), *reh'g denied*, *cert. denied*.

[21] On appeal, Garcia challenges some, but not all, of the ineffective assistance of counsel claims that he raised in his post-conviction petition. His ineffective assistance of counsel claims can be condensed into two categories: (1) failure to conduct pretrial investigation; and (2) failure to object. As for the failure to conduct pretrial investigation claims, Garcia asserts that his trial counsel: (a) failed to investigate and suppress the probable cause affidavit; and (b) failed to depose the State's DNA expert witnesses and then file a motion to exclude the DNA evidence. In regard to the failure to object claims, Garcia argues that his trial counsel rendered ineffective assistance by failing to object to the following: (a) the State's assertion that Nurse Merriman was an unavailable witness; (b) the violation of Garcia's speedy trial rights under Criminal Rule 4(A); and (c)

the trial court's lack of a competency exam for E.T. prior to trial, making it fundamental error.[8]

[22] A claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*), *reh'g denied*, *cert. denied*. "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012) (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)), *trans. denied*. "Indeed, most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *French*, 778

---

[8] Garcia also argues that his trial counsel rendered ineffective assistance by failing to object to Nurse Merriman's trial testimony and Marling's trial testimony regarding E.T.'s statements to them about what Garcia had done to her. These claims are waived because Garcia did not raise these claims in his post-conviction petition. *See Stevens*, 770 N.E.2d at 746; Ind. Post-Conviction Rule 1(8). Waiver notwithstanding, Garcia challenged both Nurse Merriman's and Marling's testimonies on direct appeal, and we held that their testimony was admissible under various hearsay exceptions. We further note that Garcia attempts to raise additional ineffective assistance of counsel arguments in his reply brief, but those arguments are waived. *See Snow v. State*, 137 N.E.3d 965, 969 (Ind. Ct. App. 2019) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived."), *reh'g denied*, *trans. denied*.

N.E.2d at 824. Therefore, if we can dismiss an ineffective assistance claim on the prejudice prong, we need not address whether counsel's performance was deficient. *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008).

[23] We first turn to Garcia's ineffective assistance claims regarding trial counsel's failure to conduct pretrial investigation. When our Court reviews a claim of ineffective assistance for failure to investigate, "we apply a great deal of deference to counsel's judgments." *McKnight v. State*, 1 N.E.3d 193, 201 (Ind. Ct. App. 2013). We acknowledge that "effective representation requires adequate pretrial investigation and preparation," but we will "resist judging an attorney's performance with the benefit of hindsight." *Id.* at 200. "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation.'" *Id.* at 201 (quoting *Strickland*, 466 U.S. at 690-91). A petitioner who seeks to establish failure to investigate as a ground for ineffective assistance of counsel is required to "go[] beyond the trial record to show what investigation, if undertaken, would have produced." *McKnight*, 1 N.E.3d at 201. "This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Id.* (internal quotation marks and citation omitted).

[24] Garcia has failed to establish that his trial counsel's pretrial investigation of the probable cause affidavit and the State's DNA witnesses fell below an objective

standard of reasonableness. Contrary to Garcia's assertion, trial counsel had reviewed both the probable cause affidavit and the DNA evidence and had made a strategic decision not to seek to suppress or exclude either one. Because trial counsel made a reasonable strategic decision, Garcia has failed to show that his performance was deficient. *See Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002) ("Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective."), *reh'g denied*. Additionally, Garcia has not established that he suffered prejudice such that the outcome of the proceeding would have been different. Thus, he has failed to meet his burden of showing that he was entitled to post-conviction relief on these claims.

[25] Lastly, we review Garcia's ineffective assistance claims regarding counsel's failure to object. To demonstrate ineffective assistance of trial counsel for failure to object, a petitioner must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010), *reh'g denied*.

[26] Garcia has failed to meet his burden of establishing grounds for relief on his three ineffective assistance of counsel claims relating to counsel's failure to object. First, Garcia is not entitled to relief on his claim that fundamental error occurred because his trial counsel failed to object to the trial court's lack of a competency exam for E.T. prior to trial. Claims of fundamental error are not cognizable in a post-conviction proceeding. *Sanders v. State*, 765 N.E.2d 591,

592 (Ind. 2002). Therefore, Garcia is not entitled to post-conviction relief on this claim.

[27] Second, as to Garcia's challenge that counsel should have objected to the State's assertion that Nurse Merriman was an unavailable witness, we note that Garcia fails to recognize that his counsel did indeed challenge the unavailability of Nurse Merriman. He also fails to acknowledge that the issue was raised in his direct appeal and that we held that the trial court did not abuse its discretion by finding Nurse Merriman to be an unavailable witness and granting the State's continuance motion. Accordingly, Garcia has failed to show that counsel's performance was deficient and that he is entitled to relief on this claim.

[28] Third, Garcia also failed to meet his burden on his claim that counsel was ineffective for failing to object to a violation of Garcia's speedy trial rights under Criminal Rule 4(A) so that he would not have been detained for a couple of weeks pending his trial. As explained in Criminal Rule 4(A) itself, any remedy for a violation of Rule 4(A) is release pending trial, not discharge. *See* Crim. R. 4(A). Even if counsel's performance had been deficient, Garcia has made absolutely no showing that there is a reasonable probability that, but for his trial counsel's alleged errors, the result of the proceeding would have been different. Accordingly, we affirm the post-conviction court's denial of post-conviction relief on Garcia's ineffective assistance of trial counsel claims. *See French*, 778 N.E.2d at 824 (holding that a petitioner's failure to satisfy either of the two prongs of an ineffective assistance of counsel will cause the claim to fail).

Affirmed.

Mathias, J., and Baker, Sr.J., concur.